UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

CARL D. WELLS,

                Petitioner,

      -v-

SUPT MARK MILLER,

                Respondent.

------------------------------------------------------------------X

21-cv-11231 (LJL)

ORDER

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 03/08/2023 |

LEWIS J. LIMAN, United States District Judge:

      The Court is in receipt of the attached state-court filings from Petitioner.  To the degree the filings are related to Petitioner's claims under the federal habeas statute, 28 U.S.C. § 2254, or the pending motion to dismiss the Petition, the Court will address the filings when it reviews Petitioner's Petition for Writ of Habeas Corpus and the pending motion to dismiss.

      SO ORDERED.

Dated: March 8, 2023
      New York, New York

                                   LEWIS J. LIMAN
                           United States District Judge

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: TAP B
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE PEOPLE OF THE STATE OF NEW YORK            NOTICE OF
                                                MOTION
                    -against-

CARL WELLS,                                     New York County
                                                Ind. Nos. 41/07 & 6548/06
                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        TONI MESSINA, ESQ., an attorney duly licensed to practice law in the courts of

this state, affirms to the truth of the following under the penalty of perjury, upon

information and belief:

    1.  I am the attorney of record for the above-named defendant, CARL WELLS, and as

such I am fully familiar with the facts and circumstances in this case.

    2.  The source of the information contained herein is my investigation and review of

the court file, conversations with prior defense counsel(s), a reading of all available

transcripts, conversations with the defendant and information and belief.

    3.  This affirmation is submitted to support defendant's motion for an order

dismissing the accusatory instrument pursuant to C.P.L. § 30.30(1)(b), C.P.L. § 30.20,

and the Sixth and Fourteenth amendments of the Unites States Constitution as well as in

the Interests of Justice.

    4.  The defendant was indicted in **2006 for** robbery in the first degree and related

charges. The defendant previously elected to proceed *pro se*. After he did not prevail at a

1

in the case, most of which relates to multiple line-up procedures. Counsel has no ~~detective reports, memo books, DUI data or video relating to the underlying arrest,~~ 911 calls, etc. These reports are all necessary for the effective representation of Mr. Wells. Attached to this memo is the Rosario list provided by the People with check-marks noted on what defense counsel has in her possession. Counsel sent ADA Robert Walker an email on May 4th, 2017, detailing what she is missing. She has received no reply and no additional Rosario material from him.

11. In addition to the problem of the lost Rosario materials, transcript of various adjourn dates were lost. These included April 30, 2008; October 14, 2008 and December 17, 2008. [The Dec. 17, 2008 minutes were eventually produced.] The court file was also lost during the pendency of this case then apparently found *after* the appeal was filed. While preparing the appeal, appellate counsel was informed by letter dated September 18, 2012, that "no further efforts to reconstruct any minutes or to recover the two lost banker's boxes of documents that composed the entire missing court file, would be productive." The boxes, later, were located although it's uncertain if they were found in their entirety or only in part. It is uncertain whether the present court file contains original documents (including the indictments) or copies and whether it is complete.

12. Minutes were taken for several past adjourn dates (prior to the appellate court reversal) by a court reporter, Daniel Kochinski, who was subsequently fired from his job. It was determined by the OCA that Kochinski's work was inaccurate (see articles) and that he was unstable. Court reporter supervisors said they have no method of guaranteeing the reliability of the adjournments that he transcribed.

13.  It's important to note that because Mr. Wells is a mandatory persistent offender he faces a mandatory, life sentence if convicted of these charges. He has now been in jail 11 years.

14.  Because more than 11 years have elapsed since these cases, defense counsel is unable (even were the original files and/or complete Rosario to be turned over) to defend Mr. Wells effectively.  Based on the overall posture of the case and the protections provided by the U.S. Constitution guaranteeing that every defendant is brought to trial within a *reasonable* amount of time following the accusation(s) against him, this case must be dismissed.

## Chargeable Time Calculations
## New York State Speedy Trial Calculation pursuant to CPL 30.30

15.  The order for the new suppression hearing and trial became final on July 7, 2015, thus starting the speedy trial clock. [C.P.L. § 30.30(5)] The first appearance after that date was August 18, 2015. The People did not announce ready for hearings or trial prior to or on that date. (42 days chargeable to the People).

16. The matter was adjourned for several control dates while a *pro se* Article 78 petition was pending.  On August 30, 2016, the Court of Appeals denied Mr. Well's motion for leave to appeal. [Counsel will not include this time in 30.30 calculations, although does not concede that it is automatically excludable.]

17. The matter was put over to September 6, 2016 for hearings and trial. The People did not announce ready on that date.  The case put then adjourned to November 15, 2016 for hearings and trial. (61 days chargeable to the People).

18. On Nov. 15 the People were not ready and the case was adjourned to November 29, 2016 for hearings and trial. The People announced they were not ready and the matter was adjourned to December 13, 2016. (15 days chargeable to the People).

19. The matter was put over to December 14, 2016 for hearings and trial. Defense counsel was not ready on that date and the matter was put over to January 24, 2017 for hearings and trial. (No includable days.)

20. On January 24, 2017, the People were not ready and the case was adjourned to February 21, 2017 for hearings and trial. (29 days chargeable to the People).

21. On February 21, 2017, the People did not announce ready and the matter was put over to March 29, 2017 for hearings and trial. (37 days chargeable to the People).

22. The People announced readiness on March 29th but had not given (or located) the Rosario material necessary for a trial to begin. Defense counsel submits this "readiness" was illusory. The case was adjourned to May 23, 2017 for hearings and trial.

## MEMORANDUM OF LAW

### A. The charges should be dismissed pursuant to C.P.L. § 30.30 because more than 180 days of chargeable time have elapsed.

23. Although C.P.L. § 30.30 (4)(a) excludes "reasonable period(s) of delay resulting from other proceedings concerning the defendant," such as pretrial motions, including "the period during which such matters are under consideration by the court," C.P.L. § 30.30(3)(b) contemplates a *causal relationship* between defendant's pending actions and the People's ability to move an indictment to trial. See *People v. Anderson*, 66 N.Y.2d 529 (1985). A delay is only "caused by" defendant's actions when defendant's actions

41. April 4, 2017 to May 23, 2017: The People announce ready for trial. However, the

People's announcement of "ready" is illusory. (Same argument as above.)**(49 days**

**chargeable to the People).**

**42.** The People were ordered to respond to defense motions by a date two weeks after

defendant's submission, however, they did not do so until at least two weeks following

that date. This delay should be charged to the People.  See *People v. Bonilla*, 94 AD 3d

633, 634 (1st Dept. 2012)


WHEREFORE, based on the foregoing and previously submitted motion to

dismiss, it is respectfully requested that defendant's motion to dismiss be granted in all

respects and the indictment herein be dismissed, or in the alternative that the court order a

hearing to determine the status of the missing Rosario, and how the People intend to

proceed if they are unable to produce the Rosario material.


DATED:  NEW YORK, NEW YORK
        August 17, 2017

                                    RESPECTFULLY SUBMITTED,


                                    TONI MESSINA, ESQ.
                                    Attorney for Defendant
                                    100 Lafayette St., Suite 502
                                    New York, NY 10013
                                    (646) 207-4705


CC:  ADA Robert Walker

*prevent* the prosecution from being ready. Otherwise the delay is excludable *only if* defendant expressly waived or consented to the delay. See *People v. Worley*, 66 N.Y.2d 523 (1985).

24. Delay can be excludable if the People show it was "occasioned by exceptional circumstances," or where the People are unable, after due diligence, to obtain evidence that is "material to the People's case" and there are "reasonable grounds to believe that such evidence will become available in a reasonable period." C.P.L. § 30.30 (4)(g). The protracted delay in this case *is not* excludable under any of these exceptions.

25. First, the time is not excludable as "reasonable period(s) of delay resulting from other proceedings concerning the defendant," such as pretrial motions, including "the period during which such matters are under consideration by the court." The trial judge must determine "the extent to which the People's failure to be ready within the statutory time period was attributable to the delays caused by defendant's prior motions." *People v. Lomax*, 50 N.Y.2d 351 (1980). See *People v. Sturgis*, 38 N.Y.2d 625 (1976) (defendant's absence did not prevent people from presenting case to grand jury, so failure to do so was not excludable delay).

26. A defendant is not entitled as of right to file motions on his behalf if he has accepted counseled representation. *People v. Rodriguez*, 95 N.Y.2d 497 (2000); see also *People v. Ross*, 21 A.D.2d 383 (2nd Dept. 1995) (a defendant represented by counsel is not entitled to hybrid representation by which he simultaneously acts *pro se*); and *People v. Couch*, 2016 NY Slip Op. 26449 (2016) ("[a] court has no duty to entertain motions

that a defendant seeks to submit on a *pro se* basis where, as here, counsel was aware of the motions and chose not to adopt them").

In this case, defense counsel never adopted the defendant's various *pro se* motions, appeals and petitions brought in various courts and jurisdictions. The fact that a defendant has filed *pro se* motions cannot reasonably have any impact on the on-going proceedings **without an express waiver of the time by counsel.** Thus they do not excuse the People's failure to be ready for trial.

27. This is not a case where the People were "entitled to await the outcome of the appeal" before subjecting both defendant and the prosecutor's office to the expense and trouble of a trial "which might well have proved to be futile." *People v. Dean*, 45 N.Y.2d 651 (1978) (it is reasonable for collateral proceedings to excuse People's readiness for trial where "one of the appeals, if successful, could well have warranted dismissal of remaining indictments against defendant.") This is a case where defendant, represented by counsel, persisted in filing motions that counsel had not adopted, none of which any reasonable prosecutor would believe could result in dismissal of the charges. Furthermore, apart from the Article 78 petition that this court denied and that was later denied by the First Department in July 2016, none of these matters was before this court or under consideration by this court. As such, these delays were not "caused by" defendant's prior motions and are not excludable under C.P.L. § 30.30(4).

28. Nor is the protracted delay excludable due to "exceptional circumstances," or the People's efforts to obtain material evidence. C.P.L. § 30.30 (4)(g). This is a retrial on straightforward charges. The People knew since July 7, 2015, that this case would be

retried. The People have offered no explanation as to why they could not be prepared for a retrial for nearly two years.

29. For the foregoing reasons, defendant moves this court to dismiss the charges against Mr. Wells pursuant to C.P.L. § 30.30, as more than 180 days of includable time has passed since the order for a retrial became final.  **SHOULD THE COURT ELECT NOT TO DO THIS, MR. WELLS IS, IN THE LEAST, ENTITLED TO BE RELEASED FROM JAIL PURSUANT TO CPL 30.30(2)(a).**

### B.  The charges should be dismissed based on the violation of the defendant's Constitutional right to a speedy trial.

30. Beyond the requirements of C.P.L. § 30.30 there exists a general speedy trial right expressed in C.P.L. § 30.20 and section 12 of the Civil Rights Law and assured by the Sixth Amendment of the U.S. Constitution.

Whether this right has been infringed depends upon an examination of five factors: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay, *People v. Taranovich*, 37 N.Y.2d 442, 445 (1975).

31. *The extent of the delay:* at least 589 days have elapsed since a new trial was ordered. (July 7, 2015 to March 29, 2017).  At least 351 days have elapsed since the First Department denied Mr. Wells *pro se* Article 78 motion to dismiss. (April 12, 2016 to March 29, 2017).  302 days have elapsed since this case was put over for trial. (May 31, 2016 to March 29, 2017).

32. This excessive period merits dismissal of the indictment. See *People v. Ortiz*, 2017 NY Slip Op 50380 (1st Dept. 2017) (43-month delay between defendant's arrest and his plea of guilty was excessive, dismissal appropriate *despite* seriousness of the charges and lack of prejudice to defendant); *People v. Wallace*, 26 N.Y.2d 371 (1970) (11-month delay between indictment and arraignment and two-and-one-half-year delay between the date of the crime and the date of the indictment warranted dismissal of indictment for first degree robbery, grand larceny, and assault); *People v. Johnson*, 38 N.Y.2d 271 (1975) (defendant's speedy trial right violated where he was incarcerated for 18 months awaiting trial on charges of murder and weapon possession, and he was prejudiced by the delay); but see *People v. Howard*, 235 A.D.2d 232 (1st Dept. 1997) (18-month delay did not violate C.P.L. §30.20 where defendant did not show he was prejudiced by the delay).

33. ***The reason for the delay:*** The People have not presented any good cause for this delay. This is a retrial on charges of robbery in the first and second degrees. The underlying facts do "not require any unusual attention or complex preparation to ensure its prompt disposition." See *Ortiz, supra*. Presumably, the investigation was completed the first time the People sought to bring this case to trial. Although Mr. Wells has filed a number of *pro se* motions as discussed above, counsel has not adopted these motions and no reasonable prosecutor would hold off preparing for and announcing readiness for trial in anticipation that Mr. Wells *pro se* motions would be granted.

34. ***The nature of the underlying charge:*** The People allege that on December 3 and December 7, 2006, Mr. Wells approached two individuals in their cars, claimed to have a gun and took the cars. There is nothing overly complicated or involved about these

had heavily lidded eyes and appeared to be intoxicated. Defense counsel has only a black and white copy of poor quality of the line-up that does not depict the hooded eyes. (Counsel knows such a photo exists, based on minutes from the first hearing.)

43. The purpose of the Rosario rule is to "protect counsel who would ordinarily have no knowledge of the material and no other means of obtaining it. *People v. Jones*, 70 N.Y.2d 547, 550, 552 (1987). The responsibility to safeguard and preserve evidence gathered against an accused lies with the prosecution. *People v. Churba*, 76 Misc.2d 1028 (NY Criminal Court 1974); see also *United States v. Bryant*, 439 F.2d 642, 651-652 (D.C. Cir. Court of Appeals 1971).

44. Where the People fail to preserve evidence, it is within the court's discretion to fashion an appropriate remedy. See C.P.L. § 240.70 (1). In fashioning an "appropriate" response to the prosecution's wrongful failure to preserve evidence "the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society." *People v. Martinez*, 22 N.Y.3d 551 (2014); *People v. Kelly*, 62 N.Y.2d 516 (1984).

45. Where the People failed to exercise due care in preserving Rosario material and the defendant is prejudiced by the loss or destruction, it is an abuse of discretion for the court to impose *no* sanction. *People v. Banch*, 80 N.Y.2d 610 (1992). Although dismissal of the charges is an extreme sanction which "should not be invoked where less severe measures can rectify the harm done by the loss" of the material, *People v Kelly*, 62 N.Y.2d 516, 521; *People v. Haupt,* 71 NY 2d 929, 931 (1988), this is one of those cases where the remedy of dismissal is appropriate because of the whole spectrum of problems

(as described above) that have effected this case. *Cf. People v. Churba*, 76 Misc. 2d 1028 (NY Criminal Court 1974).

46. As a first level of sanction, courts have ruled that the loss of *Rosario* may warrant an adverse inference charge. *People v. Wallace*, 76 N.Y.2d 953 (1990) (defendant "impermissibly prejudiced" by loss of officers' written description of defendant as it came over the radio despite undercover officer's claim that he incorporated the description of defendant into his "buy" report); *People v. Joseph*, 86 N.Y.2d 565 (1995) (adverse inference warranted by loss of arrest envelopes that "may have provided useful additional support for the defense position").

47. The next level of sanction includes precluding the witnesses whose paperwork was lost from testifying in the People's direct case. "[U]nder *Rosario* standards of fairness . . . where prior witnesses' statements are unavailable for impeachment purposes . . . a fair trial is not possible." *People v. Lunney*, 84 Misc. 2d 1090 (NY County Supreme Court 1975) (direct testimony of all witnesses whose prior statements had been lost prohibited, but indictment not dismissed based on prosecution's representation that they could prove the case beyond a reasonable doubt on unaffected evidence).

48. Any witness whose prior statements were lost by the People should be precluded from offering testimony in the People's case, and the court should require the People to make a showing that they can prove their case without presenting any evidence impacted by their failure to preserve evidence.

49. Finally in some cases, courts have ruled that the loss of evidence can be so prejudicial that dismissal is the *only* appropriate remedy. See *People v. Churba*, 76 Misc

2d 1028 (loss of evidence required dismissal of the indictment); *People v. Day*, 102 Misc. 2d 11 (Supreme Court, Nassau 1979) (dismissal appropriate sanction where people called witness to the stand despite "knowing at the time that a statement was taken of this witness' account of the facts on the date of the incident, and that that statement was unavailable at the time of trial"); *People v. Fleishman*, 92 Misc. 2d 156 (Supreme Court, Suffolk 1977) (loss of detective's notes of interview required dismissal of the indictment); see, also, *United States v. Pollock*, 417 F. Supp. 1332 (Dist. Court, D. Massachusetts 1976) (dismissal required due to loss of detective's contemporaneous notes of conversation with defendant.)

50. As far as this counsel is aware (she is the third counsel on the case), the only Rosario material provided thus far, pertained to the suppression hearing only. (This is based on what she has been provided by prior defense counsel.) Additional Rosario pertinent to the trial may have never been turned over.

51. Finally, there is no way to know if Brady material was lost or destroyed along with the Rosario material.

## DISMISSING IN THE INTEREST OF JUSTICE

52. In addition to all of the above arguments, there have been a series of mishaps in this case that compel dismissal in the interest of justice.

Among the mishaps are:

1) the judge took a plea from a defendant who had been found unfit (at one point) pursuant to CPL 730, without sufficiently allocuting him on his decision to be *pro se*.

2) the loss of the court file so that appellate counsel could not base her appeal on a full record,

3) the ineptitude of a court report (Daniel Kochinski) who took the minutes for several of the court adjourn dates and was later fired (or resigned) for incompetency, (Tab C)

4) the destruction of Mr. Well's prior two felony files (which have been the subject of 440 motions and the basis of the determination of his mandatory-persistent status) in a fire at the Brooklyn Navy Yard (Tab D),

5) the loss of minutes from several adjourn dates prior to Mr. Well's plea of guilty, which could not be reconstructed,

6) the apparent loss of much of the People's original and/or copied Rosario material relating both to these indictments and the earlier DUI arrest which was the predicate for Mr. Wells' arrest on these charges.

Due to all of these issues, it would be impossible for counsel to adequately defend Mr. Wells at hearings and trial in these cases.

**PERSONAL HISTORY**

Mr. Wells is a 54-year-old man raised in Michigan. As a child he watched his father beat his mother. This effected him emotionally. Although he is highly intelligent, he suffers from decades of alcohol and drug abuse.

After examining Mr. Wells' medical history and conducting neuropsychological testing, neuropsychologist Dr. Daniel Capruso concluded that the level of alcohol abuse Mr. Wells suffered, as well as injuries from a serious car accident in 1989,

damaged the functioning of Mr. Wells' brain, specifically the frontal lobe, the part responsible for decision making and consequential thinking. When examined by psychiatrist Dr. Eric Goldsmith, Mr. Wells admitted to suffering obsessions. One of his primary obsessions (as corroborated by the plethora of motions he has filed in his cases), involves an obsession with the law. He has been described as "grandiose" with some underlying paranoia. He has in the past been found "not fit to proceed" pursuant to CPL 730 and has been diagnosed as bi-polar. He has difficulties prioritizing what's significant from the less significant when confronting legal issues. His focus on all things legal has, at times, risen to the level of mania especially in this case where there's been a perfect storm of complications -- his court file being lost, the main prosecutor in his case leaving the office, the court reporter being fired, the loss of Rosario materials by the People, his arrest in the Bronx and its subsequent "decline to prosecute," although a suppression hearing was held in that case, a fire in the Brooklyn warehouse where files relating to his earlier convictions were kept, etc.

Yet in spite of Mr. Well's apparent mental health issues, he is empathetic and insightful about many matters. Immediately following his arrest, he expressed remorse to anyone he may have hurt due to his criminal behavior. [Whether his confession and memory are reliable due to his intoxication and potential frontal lobe damage is still in question.]

He has a child who he had not been in touch with for decades but who recently wrote him a letter in jail. He has been married and was once a virtuoso guitar player. (His father was a recording artist.) He plays guitar so well that a corrections officer

18

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK:  TAP B
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE PEOPLE OF THE STATE OF NEW YORK,                    NOTICE OF
                                                         MOTION To RENEW and
                    -against-                            REARGUE, CPLR 2221

CARL WELLS,                                              New York County
                                                         Ind. No. 41/07 & 6548/06
                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

   PLEASE TAKE NOTICE that upon the annexed affirmation of TONI MESSINA, ESQ., and

all the prior pleadings and proceedings, attorney for the defendant CARL WELLS, will move

this Court Part TAP B, located at 100 Centre Street, New York, New York, on the 16th day of

May 2018, or as soon thereafter as counsel can be heard, for an order:

   1) permitting counsel to renew and reargue a speedy-trial motion pursuant to the U.S.

Constitutional and N.Y. Statute 30.30, and 2) granting a hearing on the issues of fact developed

in the original motion in addition to facts added herein following the guidance provided by the

Court of Appeals in the recently decided case of *People v. Wiggins,* (2018 NY Slip Op 01111),

pertaining to the constitutional speedy trial rights of defendants.


DATED:  NEW YORK, NEW YORK
         April 16, 2018


                              RESPECTFULLY YOURS,



                              TONI MESSINA, ESQ.
                              Attorney for Defendant
                              305 Broadway, Suite 1422
                              New York, NY 10007
                              (646) 207-4705

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: TAP B
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THE PEOPLE OF THE STATE OF NEW YORK

<u>MOTION TO REARGUE
VIOLATION OF RIGHT TO
SPEEDY TRIAL AND FOR A
HEARING</u>

CARL WELLS,                                                    Ind. No. 41/07 & 6548/06
                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - -- --- - - - - X

      TONI MESSINA, ESQ., an attorney duly licensed to practice law in the courts of this

state, affirms to the truth of the following under the penalty of perjury, upon information and

belief.

      Counsel makes a motion to renew and reargue her motion to dismiss, previously decided on

September 25, 2017, by the Honorable  McGrath (oral decision only), in light of recent

clarifications regarding a defendant's constitutional rights to a speedy trial in the case of *People

v. Wiggins*, supra.  Further, counsel submits that the court erred in not ordering a hearing relating

to disputed facts and chargeable time periods.  (*People v. Allard*, 28 N.Y.3d 41 (2016) and CPL

210.45(5)(c)).

    <u>Background</u>

    The source of this information is my investigation and review of the file, conversations with

the defendant and prior counsel, review of the law, and information and belief.  This motion

incorporates all facts and information submitted in prior motions relating to these issues.

    The defendant was charged with multiple counts of robbery in the first degree. The incidents,

all relating to alleged car-jackings, occurred on December 3, 2006 (Ind. No. 41/07) and

1

December 7, 2006. Mr. Wells was arrested on December 8, 2006 and has remained incarcerated since that time -- more than eleven years.

Before pleading guilty, the defendant was permitted to proceed *pro se*. He presided over a suppression hearing in October 2009, and, following the denial of the motion to suppress and a 30.30 motion, he pleaded guilty to robbery in the first degree. He was sentenced to two concurrent terms of 20 years to life. (The defendant is a mandatory persistent.)

On July 7, 2015, the First Department reversed the conviction and ordered a new suppression hearing, holding that Mr. Wells' waiver of his right to counsel was not knowing and intelligent. The court found that the trial court had not conducted a "searching inquiry" as to whether Mr. Wells was capable of proceeding *pro se* and whether he understood the dangers therein. See *People v. Wells*, 130 A.D.3d 457 (1st Dept. 2015).

During the pendency of his case (March, 2007), Mr. Wells had been found unfit. He was diagnosed as suffering from a "schizoaffective disorder, bipolar type" which included "grandiose, unrealistic thinking and focus on irrelevant details." (730 Report). These same characteristics were noted by Dr. Daniel Capruso, a clinical neuropathologist, and psychiatrist Dr. Eric Goldsmith, hired by defense to examine Mr. Wells.

One feature of Mr. Well's psychosis is a persistent obsession with the law. Mr. Wells has written motions, letters, complaints against judges, prosecutors and defense attorneys, motions to reargue, motions to appeal, writs of prohibition, etc. Boxes of motions have been written by Mr. Wells since his arrest in 2006. They include letters to local clerks' offices, all levels of appellate courts, federal and state including the U.S. Supreme Court, and even to the pope.

Although his motions were not adopted by counsel (she was unaware of many of them), they have been cited by the People as the primary explanation of why they did not answer ready for trial on most occasions in this case.

From the date Mr. Wells was arrested and indicted, more than 11 years have elapsed. He has been in jail awaiting trial that entire time. Between the time of the reversal of his conviction and today's date, close to three years have expired, (July 7, 2015 to April 10, 2018). Two years have elapsed since the First Department denied Mr. Wells' *pro se* Article 78 motion to dismiss, (April 12, 2016 to March 27, 2018). Nearly two years have elapsed since the case (post appeal) was set for trial following the denial of his Article 78 motion (May 31, 2016 to March 27, 2018).

In June, 2017, defense counsel filed a motion to dismiss based on C.P.L. § 30.30(1)(b), C.P.L. § 30.20, and the 6th and 14th amendments to the Unites States Constitution. Although years have elapsed, the People concluded in their response that only 56 days was chargeable time. N.B. -- They *did not* respond to the constitutional speedy trial argument, nor did the People present "unquestionable documentary proof" that "conclusively refuted" the defendant's motion as required by *Allard,* 28 N.Y.3d 41 (2016). Defense counsel responded to the People's reply.

On Sept. 25, 2017, Judge McGrath (TAP B) concluded in an oral decision (minutes attached) that only 74 includable days had elapsed. (See Transcript, Sept.25, 2017, page 3, lines 1-6) He, too, did not address the constitutional speedy trial issue or address the legal question of when *pro se* motions by a defendant represented by counsel toll a constitutional speedy-trial clock. This appears to be an issue of first impression in this jurisdiction.

3

The Court of Appeals, however, provided recent guidance on how it interprets defendants'

due process rights to a speedy trial in *People v. Wiggins*, supra, (a murder case) decided in

February, 2018.

In *Wiggins* the court wrote:

> *The answer to the question "how long is too long?" is a difficult one to resolve. However, certain basic principles must guide us. An accused's right to be presumed innocent is protected by the right to prompt justice. Incarceration should generally follow conviction, not precede it. The failure of our criminal justice system to promptly resolve cases erodes faith in its fundamental fairness. This Court has long recognized that "[s]ociety, as well as the defendant, has an important interest in assuring prompt prosecution of those suspected of criminal activity" (People v Staley, 41 NY2d 789, 792 [1977], citing People v Johnson, 38 NY2d 271, 276 [1975]).*

While the court gave no specific parameter in determining what length of

delay requires dismissal (every case must be judged on its own merits), it ruled

that six years of pretrial delay were *de facto* "extraordinary." It subsequently

granted defense counsel's motion to dismiss on constitutional speedy-trial

grounds

Defendant moves to renew and reargue his motion to dismiss and/or for a

hearing on the matter following the *Wiggins* decision because the pre-trial delay

in this case has been "extraordinary" and because the People have not presented

"unquestionable documentary proof" that "conclusively refute[s]" the defendant's

motion. *People v. Allard,* 28 N.Y.3d 41 (2016); CPL § 210.45(5)(c).

Defendant supplements its original statutory speedy-trial motion to include time that has

elapsed since filing its original motion to dismiss in June, 2017. The People took several months

4

to respond to that motion -- more time then was granted by the court (as was typical of most motions in this case.)

<u>All Of the Time Mr. Wells Has Been Incarcerated Should Be Considered</u>

While, generally, where a case is reversed on appeal, the statutory speedy trial clock runs anew from the point of reversal, in this case where counsel's argument is that defendant's due process rights were violated by cumulative delays, errors and oversights, *all* periods from the inception of the case should be considered under a constitutional speedy-trial analysis.

Mr. Wells has been incarcerated since 2006. In the first instance (pre-plea), the People did not answer ready for trial for several years. Delays also occurred in perfecting Mr. Well's appeal caused by the People and the court's loss of Mr. Wells' files. In addition transcripts from several court dates could not be found and had to be reconstructed.

Once the case was reversed and re-calendared in Supreme Court, the People did not answer ready for trial for at least two years. All of these periods are relevant to a constitutional speedy trial analysis.[1]

The chronology in Mr. Wells' case is long, but can be broken down into three distinct parts. **Part I**: The period from defendant's arrest through his appointment *pro se,* including hearings, guilty plea and sentencing. **Part II**: The period involving the delayed perfection of appeal due to the court and People's errors in losing materials relevant to that appeal, and **Part III:** The period after the conviction was overturned to the present.

**Part I:**   <u>Defendant's arrest through the date of his plea, December 2006 to February 2011.</u>

---

[1] Any argument that the defendant waived speedy trial rights through his initial plea is unavailing. First, the Appellate court ruled that defendant was improperly appointed *pro se.* Any decisions he made regarding his case should be deemed either unknowing or involuntary. Next, his due-process constitutional-right to a speedy trial was never waived.

Although Mr. Wells was arrested in December 2006, no hearing was held in his case until October, 2008, close to two years later. A decision on those hearings (denying defendant's motion to suppress) was not rendered until January 26, 2009, three years following the arrest, and months following the conclusion of the hearing.

While it is clear that the five-month period between March, 2007 and July 2007, when the defendant was found "not fit" to proceed, is excludable, the remainder of the time is more questionable. As an example, the original prosecutor on the case, Michael Fistel, left the office and a new prosecutor was not appointed to the case for months (June 2010 - September 2010). The People, in their response, presume this time to be excludable. This should not be the case. The People's failure to expeditiously appoint substitute counsel is not a justifiable reason to delay a defendant's trial.

When Mr. Wells (*pro se*) filed a 30.30 motion in June, 2010, the People did not respond to the motion for four months. The judge decided that motion on Oct. 27, 2010, finding 132 includable days but gave the People leave to reargue. The judge refused to release Mr. Wells even though more than 90-days of includable time had elapsed.

The People did not answer ready for trial on the next court date, Dec. 14, 2010. The court (J. Carro), claiming its inability to obtain certain transcripts, did not finalize its 30.30 decision until Feb. 10, 2011. On Feb. 14, 2011, defendant pled guilty.

## Part II:   The Appeal of Defendant's Conviction.

The appeal of the case was significantly hampered by the loss of the court file (two bankers boxes) by the Court. After being assigned the appeal, appellate counsel Claudia Trupp, Center for Appellate Litigation (CAL), learned that portions of the transcript had been lost. Reconstruction hearings had to be done. The People were granted numerous extensions while

they attempted to locate and reconstruct the file.  On September 18, 2012, the trial court notified

appellate counsel that "no further efforts to reconstruct any minutes, or to recover the two lost

boxes of documents would be productive."  (9/18/12 at 3-4.)(Trupp appellate brief attached.)

A period of at least six months is attributable to appellate counsel's unsuccessful efforts to

piece together and reconstruct the record, followed by the People's unsuccessful efforts.

Transcripts, missing from April 30, 2008, October 14, 2008 and December 17, 2008, were

sought but only the minutes from December 17, 2008, were produced.

On July 7, 2015 (four years following Mr. Wells' plea of guilty), his conviction was

overturned.   Mr. Wells had now been incarcerated for nine years.

**Part III:** The Period from Reversal to Today, July 2015 through April, 2018.

Mr. Wells was appointed new counsel.  Mr. Wells again considered the idea of being

appointed *pro se*, but no judge allowed it.  Counsel was appointed throughout the pendency of

the remanded case.  This counsel was assigned in October, 2015.

The People did not answer ready until 2017.  While it is true that Mr. Wells served dozens of

motions *pro se* including Article 78's, Habeus Corpus petitions, writs of prohibition, etc., counsel

submits that *unless* those motions were adopted by counsel, they do not toll speedy trial either

under N.Y. statutory speedy trial law or under a constitutional-due-process analysis.

While Mr. Wells continued (and continues) to file *pro se* motions, appeals and petitions,

defense counsel has not adopted these motions. The trial court has not considered the motions

petitions or appeals.   The only *pro se* motions that was considered or even acknowledged by the

Court was *pro se* Article 78 filing, which Judge J. Konviser denied.  Mr. Wells appealed to the

First Department and on April 12, 2016, and the First Department upheld the court's denial.

[(*Wells v. Konviser*, 138 A.D.3d 501 (1st Dept. 2016)). On August 30, 2016, the Court of Appeals

denied Mr. Wells's motion for leave to appeal. *Wells v. Konviser*, 2016 NY Slip Op 83953 (2016).]

So numerous have been Mr. Wells' motions that the court (Tap B law clerk John McPadden) informed counsel that, when received, they would no longer place Mr. Wells' motions in the court file. Instead the court would collect numerous manila envelopes filled with motions, letters, and case law and hand them to counsel.

Where a defendant is represented by counsel, the court is not obliged to consider motions filed *pro se* until and unless they are adopted by counsel, and although hybrid representation is permissible (as was done in the first case where Mr. Wells represented himself but had LAS appointed as his legal advisor), Mr. Wells was never appointed *pro se* or with hybrid counsel since his convictions were reversed.

In short, the copious amount of Mr. Wells' *pro se* submissions — the major reason the People cite for their delay in answering ready -- did not, in reality, prevent them from being ready.

**LAW:**

This motion to renew and reargue is based on the recent decision of *People v. Wiggins, supra*, which gave guidance to lower courts on how to determine the complex issue of when long delays are too long and therefore do not comply with constitutional-due-process mandates.

In *Wiggins*, the People took six years before answering ready in a murder charge in hopes they would win the cooperation of a co-defendant in the case and, thus, have stronger facts to present at trial against *Wiggins*. In deciding in favor of defendant, the court referred to the balancing test outlined in *People v. Taranovich*, 37 NY2d 442 [1975] citing the following factors: 1) the extent of the delay; 2) the reason for the delay; 3) the nature of the underlying

8

charge, 4) whether there had been an extended period of incarceration, and 5) whether or not there was any indication the defense had been impaired by reason of the delay.

The *Wiggins* court refined the *Taranovich* analysis to include the following points:

1) A six-year delay is assumed to be "extraordinary," and while there is no still no "specific period beyond which a criminal prosecution may not be pursued," (*Taranovich* at 445), when the delay is substantial, it demands "close scrutiny of the other factors, especially the question of why the delay occurred." (*Wiggins* at 8, citing *People v. Romeo*, 12 NY3d 51, at 56). *Wiggins* clearly restates the law that it is "the People's burden to bring a defendant to trial in a timely fashion" not the defendant's. (*Wiggins* citing *Romeo*, 12 NY3d at 56).

2) The *constitutional right to a speedy trial* stands independent of the *statutory CPL 30.30* right to a speedy trial "in both form and intention." (*Wiggins* at 9.) "The problem of prosecutorial readiness addressed by CPL 30.30 and the constitutional speedy trial rights are not analogous." (*Wiggins* at 8.) This clarification elucidates that even though a period might be excludable under CPL 30.30 (such as in the case of *Wiggins* where co-defendant waived time), those same periods are not *per se* excludable under a constitutional speedy trial analysis.

3) The court must examine the "reasonableness" of the People's delay.

4) *Wiggins* made clear that whether the delay in answering ready by the People was in "good faith" or not, is not relevant in cases where the delay is caused *after* a defendant has been arrested and indicted (as opposed to pre-charge delay.) ("The People's good faith determination to delay the defendant's trial cannot continue indefinitely, even if their proffered justification for the delay would otherwise excuse a reasonable period of

9

delay." *Wiggins,* at 11.)   The court concluded it is not defendant's obligation to show

prejudice or that the People acted in bad faith in delaying their announcement of

readiness, as even a mistaken belief that the prosecution did not have to answer ready

does not vindicate an "extraordinary" delay in bringing a defendant to trial.

5) Defendant need not show specific prejudice due to the delay. When the length of time is

extreme, *Wiggins* says -- prejudice is assumed. ("A lengthy period of pretrial

incarceration detrimentally impacts an accused individual in ways that go beyond specific

impairment of the defense.  We therefore conclude that defendant suffered presumptive

prejudice." Wiggins, at 18.)

Applying the Wiggins Factors to Wells

There can be no doubt that an "extraordinary" amount of time has passed since Mr. Wells

was arrested in 2006.  The People attribute much of the delay to Mr. Wells filing of *pro se*

motions which they submit makes all time excludable until those motions were decided.

This is an untenable position for the following reasons:  1) *Pro se* motions, *not* adopted by

counsel and *not* considered by the court, do not toll the speedy trial clock even under a CPL

30.30 (see *People v. Rodriguez*, 95 NY2d 497).  2) Under a constitutional speedy-trial analysis,

there is no such excludability for a defendant's *pro se* motions.  3) Mr. Wells suffers from a

diagnosed mania which compels him to write motions incessantly.  This obsession has been

noted in 730 reports.  The prosecutor is also well aware of this mania and has been the direct

recipient of many of these motions and complaints.

A defendant is not entitled as of right to file motions on his behalf if he has accepted

counseled representation. *People v. Rodriguez*, 95 N.Y.2d 497 (2000); see also *People v. Ross*,

21 A.D.2d 383 (2nd Dept. 1995) (a defendant represented by counsel is not entitled to hybrid

representation by which he simultaneously acts pro se); *People v. Couch*, 2016 NY Slip Op.
26449 (2016) ("[a] court has no duty to entertain motions that a defendant seeks to submit on a
*pro se* basis where, as here, counsel was aware of the motions and chose not to adopt them.")

   In this case, defense counsel did not adopt the defendant's multiple *pro se* motions,
appeals, and petitions. Without an express waiver of time by defense counsel, or the adoption of
the client's *pro se* motions, the People have no *reasonable* basis to claim they were unable to
answer ready for trial.

   Case law in other jurisdictions which dealt with a situation similar to that of Mr. Wells
stated that where a defendant, represented by counsel, has filed a "flood" of pro se motions
which his counsel did not adopt, those motions would be deemed frivolous. See *U.S. v. Khatid*,
606 Fed.Appx. 845 (7th Cir.). In *Khatib* the court would not consider a defendant's speedy trial
motion preserved where his attorney did not adopt the motion. The court wrote, *"To be
sure, pro se defendants are accorded a certain latitude; Khatib, however, **was not**
a pro se defendant. He was represented by counsel who directed his defense and filed motions on
his behalf. The mere inclusion—among a flood of other frivolous filings—of a motion to dismiss
on speedy trial grounds is not sufficient to preserve this issue."*

   Similarly in this case, it is clear from the People's responses (or lack thereof) of responses
to Mr. Wells persistent *pro se* motions that both the court and the prosecution found these
motions to be frivolous. This is not a case where the People were "entitled to await the outcome
of the appeal before subjecting both defendant and his office to expense and trouble of a trial
which might well have proved to be futile." *People v. Dean*, 45 N.Y.2d 651 (1978) (reasonable
for collateral proceedings to excuse People's readiness for trial where "one of the appeals, if
successful, could well have warranted dismissal of remaining indictments against defendant.")

11

This is a case where defendant, represented by counsel, continued to file motions not adopted by counsel, none of which any reasonable prosecutor could believe would result in a dismissal of the charges.  Furthermore, apart from Mr. Wells' appeal of this court's denial of his Article 78 petition which the Court of Appeals declined to review on August 30, 2016, none of these matters was under consideration by this court.

Applying the reasoning from *Wiggins*, supra, it was **unreasonable** for the People to have relied upon the flood of filings made *pro se* by the defendant (not adopted by counsel and not considered by the court) to presume it could not or need not be ready for trial.

### The Taranovich Factors:

### Factor 1: The Extent of the Delay

In *Wiggins*, the Court of Appeals held "[t]here is no question that the six-year delay between the shooting in 2008 and defendant's guilty plea in 2014 was extraordinary.'" Here, the delay has been over 11 years, eclipsing any constitutional-speedy-trial-delay counsel could find in case law.  The length of this delay is double the amount of time that courts have previously deemed "extraordinary," "shocking," or "exceptionally protracted." See e.g. *Wiggins* (homicide,  six years); *People v. Johnson*, 38 N.Y.2d 271 (1975) (defendant's speedy trial right violated where he was incarcerated for 18 months on charges of murder and weapon possession); *People v. Wallace*, 26 N.Y.2d 371 (1970) (11-month delay between indictment and arraignment and two-and-one-half-year delay between the date of the crime and the date of the indictment, warranted dismissal of indictment for first degree robbery, grand larceny, and assault); *People v. Ortiz*, 2017 NY Slip Op 50380 (1st Dept. 2017) (43-month delay between defendant's arrest and his plea of guilty was excessive, dismissal appropriate despite seriousness of the charges and lack of prejudice to defendant); *People v. Mason*, 125 A.D.2d 595 (2d Dep't 1986) (murder indictment

12

dismissed where defendant was incarcerated for 21 months and People justified delay on grounds that they wanted to try co-defendant first); *People v. Charles*, 180 A.D.2d 868, 870 (3d Dep't 1992) (delay of 43 months is so "exceptionally protracted" that it "puts the burden squarely on the prosecution to establish good cause thereof,"); *People v. Virgil*, 115 A.D.2d 286 (4th Dep't 1985) (indictment dismissed after 22-month delay).

The 135-month delay in this case creates a strong presumption that Mr. Wells' constitutional speedy trial right was violated. Again, Mr. Wells cannot be blamed for the delay. "[W]hen there has been a protracted delay, certainly over a period of years, the burden is on the prosecution to establish good cause [for the delay]." *Singer*, 44 N.Y.2d at 254.

Factor 2: Reason for the Delay

In addition to the People's wrongful assumption that Mr. Wells' *pro se* motions excused them from being ready for trial, this case has been plagued by mishandling and disorganization. Files were lost by the court and the People. It took four months for a second prosecutor to be appointed after the first one left the office. It took two months for the judge, deciding a straightforward suppression hearing, to render a decision. A significant amount of Rosario material was lost or destroyed, and still is.

Mr. Wells has fallen through the cracks of the criminal justice system. While a small part of the delay can be ascribed to Mr. Well's obsession with filing motions and the need for new defense counsel to be appointed, this does not excuse the People from answering ready over the long scope of the case, or the Court from insisting the case move forward.

This is the very type of case – involving a complicated defendant with a history of mental illness – that the constitutional right to a speedy trial right was meant to address.

13

Meanwhile, Mr. Wells' memory has grown increasingly erratic due to both the passage of time and what a cognitive neurologist identified as brain damage from Mr. Well's excessive use of alcohol and other substances.

Mr. Wells' mania with the law and obsessive writing of motions, letters and appeals, except for the period when he was found "not fit" to proceed, cannot be used as an excuse for the myriad delays in the case, particularly when his motions were not considered by the court. Furthermore, it is the criminal justice system's responsibility to bring a case to trial in a timely manner, not a mentally ill defendant's.

The prosecution here has engaged in obfuscation and game-playing. At one point, the prosecutor represented to counsel that Rosario in the case had been lost, then one month before the scheduled trial date, a disc containing thousands of documents was turned over to defense. [Although what may be the most relevant data in relation to Mr. Wells' intoxication on the date of his arrest and statement, is still lost or destroyed.] The prosecution has persisted with the same pattern of delay that contributed to four years elapsing before Mr. Wells pled guilty in the first iteration of this case.  It is counsel's position that mismanagement and disorganization on the part of the prosecution has been the root of much of the delay.

Furthermore, no matter how strongly the People believed they had a right to delay the prosecution due to Mr. Well's motions as stated in *Wiggins*, supra, "the People's good faith determination to delay the defendant's trial cannot continue indefinitely, even if their proffered justification for the delay would otherwise excuse a *reasonable* period of delay."

If a mentally ill defendant could stop proceedings indefinitely while he files baseless motions in jurisdictions all around the nation and, in this case, around the world, there would be

no forward momentum of justice. This is why it is incumbent on the People to bring cases to trial, and *not* the defendant's obligation. *Singer, supra*.

Factor 3: The Nature of the Underlying Charge

The case involves charges of robbery where Mr. Wells is alleged to have carjacked two vehicles displaying what appeared to be a gun.   There is no doubt these charges are serious.

However, in referring to the seriousness of the underlying charges, the *Taranovich* court was not stating that certain charges are too serious to ever be dismissed, but rather that the court should view the "seriousness" to determine the complexity of the case and whether it is reasonable for the People to need additional time to prepare for trial. (*Taranovitch*, supra.)  It is in this spirit that even murder cases have been dismissed.

This case is not complex. The underlying facts are straightforward and do "not require any unusual attention or complex preparation to ensure its prompt disposition." See *Ortiz, supra*.  Mr. Wells is alleged to have approached the complainants and taken their cars.  He is later found in an intoxicated state inside one of the cars which he has crashed into a wall.

Furthermore, because this case had already been prepped for trial and a suppression hearing already held, the People should have had all their materials, investigation, Rosario and legal research in place at the point the case was remanded to Supreme Court.

Factor 4: Whether there has been an Extended Period of Pre-trial Incarceration

Mr. Wells has been incarcerated for over eleven years on these indictments. While "there is no specific temporal duration after which a defendant automatically becomes entitled to release for denial of a speedy trial," there is no doubt that eleven years is exceptionally long – almost double the span the court found "extraordinary" in *Wiggins,* finding six years, three months and 25 days of pretrial incarceration to be "extraordinary."  Also see, *Barker v. Wingo*, 407 U.S.

514, 533 (1972)(five years "extraordinary"); *People v. Staley,* 41 N.Y.2d 789, 792 (1977)) (31 months "extraordinary"); *People v. Winfrey,* 20 N.Y.2d 138, 143 (1967) (4½ years "unreasonable"); *People v. Moore,* 63 A.D.2d 602, 605 (1st Dept 1978, Sandler, J., dissenting), rev'd on dissenting mem 47 N.Y.2d 872, 874 (1979)(18½ months "shocking").

This factor weighs heavily in Mr. Wells' favor.

Factor 5: Whether Defense Has Been Impaired

The Supreme Court stated that "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown.'" (*Doggett,* 505 US at 655, quoting *Barker,* 407 US at 532). The courts therefore "generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." (*id.*). Although "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, . . . it is part of the mix of relevant facts, and its importance increases with the length of delay" (*id.* at 656). Similarly, in *Taranovich,* the court said, "where [under] the circumstances delay is great enough, there need be neither proof nor fact of prejudice to the defendant." (*Taranovich,* 37 NY2d at 447).

The *Wiggins* court made clear that where the delay between commencement of the case and trial is so great, there is a presumption of prejudice to the defendant. ['In addition, 'prejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings' (*Moore*, 414 U.S. at 26–27, 94 S.Ct. 188). "Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety

, family and his friends. These factors are more serious for some than for others, but are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty" (*Id.* at 27, 94 S.Ct. 188), *Wiggins* at 7.]

This factor, thus, should weigh heavily in defendant's favor.

And even though defendant need not proffer any specific prejudice when the delay is so long, counsel submits that Mr. Well's defense has been prejudiced here. Not only have defense witnesses been lost, but Mr. Wells' ability to assist in his own defense has been irreparably damaged by the protracted delay. His memory of events, already questionable due to cognitive damage he's suffered over the years, has become close to impossible to reconstruct with any accuracy.

<u>Why A Hearing is Necessary</u>

In addition to its motion to renew and reargue the dismissal of this case based on new case law in *Wiggins*, counsel submits that a hearing should be ordered on both the *Clayton* and speedy-trial issues based on disputed facts. CPL 210.45

CPL 210.45 states that once "all papers of both parties have been filed," including any "documentary evidence," the motion court must determine "whether the motion is determinable without a hearing to resolve questions of fact" (CPL 210.45[3] ) and may deny the motion without a hearing **only if, as relevant here, the People have "conclusively refuted" an allegation of fact essential to support the motion "by unquestionable documentary proof."** (CPL 210.45[5][c])

Defendant submits that the People have not "conclusively refuted by unquestionable documentary proof" allegations of fact in this case. This motion refers to and incorporated

17

defendant's reply to the People's answer to its original speedy-trial motion.  In that reply, counsel counters most of the periods the People claim are excludable.

As an example of the inattention the People have paid to this case, the prosecutor in his response excludes all time from *August 18th, 2015* through *Jan. 24th, 2017*.  Clearly this is not the case. (This may be a typo in their response but it stands as written.)  In another section of their answer they move to exclude the period between "*January 19, 2017* and *January 29, 2016*," [the years may be in reverse, or it may not be the correct years at all] displaying further errors in either their analysis or attention to this matter.

Furthermore, although the People have answered ready on this case one time since it was remanded for new proceedings, defendant challenges the People's proffered "readiness." First, materials of grave consequence to the adjudication of the case are still missing including *inter alia*, those relating to the defendant's intoxication when he was first arrested in the Bronx for DWI.  These materials go to probable cause for the arrest, defendant's state of mind at the point he waived his Miranda rights, and his condition when line-ups were held.

In its reply, defense counsel gave careful consideration and repost to each period the People cited as excludable.  The court, in its decision, did not credit or explain how it arrived at its calculation of 74 days, nor did it address either the legal or factual issues raised in defendant's original motion and reply.

In a matter of such gravity, where there are clear issues of law and fact that must be determined before a motion is decided, it behooves the court to convene a hearing.

## CONCLUSION

Counsel herein made the following motions:

1) a motion to reargue its prior motion to dismiss in that new law has been presented which the court did not (and could not) consider in making its prior determination pursuant to CPLR 2221 (d)(2), and,

2) a motion to renew based on the fact that there has been a clarification of speedy-trial law interpretation that would change the prior determination, CPR 2221(e)(2).

Not only has an "extraordinary" amount of time elapsed between the commencement of this case and the People's answer of readiness, but there have been clear-cut and repeated lapses and delays by the People (late motion responses, lost Rosario, changes of lead prosecutors, etc.) that have exacerbated the speedy adjudication of this matter (what Mr. Wells describes in his many *pro se* motions as a "botched prosecution.")

While Mr. Wells has filed (and continues to file) *pro se* motions, where those motions are not adopted by counsel or the court; where the defendant has a history of mental health problems, and where the motions are clearly viewed as frivolous, they cannot be held to excuse the People from answering ready.

The failure of our criminal justice system to promptly resolve cases erodes faith in its fundamental fairness. This Court has long recognized that "[s]ociety, as well as the defendant, has an important interest in assuring prompt prosecution of those suspected of criminal activity".

Eleven years of incarceration before a trial is commenced is too long.

For the foregoing reasons, defendant moves this court to dismiss the charges against Mr. Wells pursuant to C.P.L. § 30.20 and section 12 of the Civil Rights Law, the Sixth amendment and 14th amendments of the United States Constitution, or in the alternative to order a hearing where there is a clear examination of each time period in question and irrefutable proof by the People that those periods should be excluded pursuant to CPL 30.30, or a careful weighing of

19

each *Taranovich* factors in light of the recent interpretation of those factors in *Wiggins*, for a determination of whether Mr. Wells constitutional rights to a speedy trial have been violated.

WHEREFORE, it is respectfully requested that defendant's motion to dismiss be granted in all respects and the indictment herein be dismissed.

DATED:   NEW YORK, NEW YORK
         April 16, 2018

                                        RESPECTFULLY SUBMITTED,

                                        TONI MESSINA, ESQ.
                                        DANIELLE VON LEHMAN, ESQ.
                                        Attorneys for Defendant
                                        100 Lafayette St., Suite 502
                                        New York, NY 10013
                                        (646) 207-4705

CC:  ADA Robert Walker

20

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CRIMINAL TERM
-------------------------------------------------------------------
THE PEOPLE OF THE STATE OF NEW YORK,
ex rel Toni Messina, Attorney on Behalf of Carl Wells,

*Petitioner*

     v.

WARDEN, ANNA M. KOSS
CORRECTIONAL CENTER 16-00
HAZEN STREET, East Elmhurst, NY 11370, or
any Other Person Having Custody of the Defendant.

*Respondent.*
-------------------------------------------------------------------

VERIFIED PETITION FOR WRIT
OF HABEAS CORPUS

INDEX #

NYSID # 05915794J

  The People of the State of New York, upon the relation of Toni Messina, Esq., attorney for petitioner Carl Wells, makes this petition on behalf of the petitioner and respectfully states:

**PRELIMINARY STATEMENT**

  This habeas corpus proceeding challenges the pretrial detention of Petitioner Carl Wells in violation of CPL 30.30(2), as more than 90 days of pretrial detention have elapsed.

  Petitioner is presently in the custody of Anna M. Koss Correctional Center (AMKC), Rikers Island and being unlawfully detained by the above-named Respondent/Warden, who is an employee/official of the N.Y. City Dept. of Correction, and Warden of the AMKC, Rikers Island, WHEREAT Petitioner is presently being physically, and ILLEGALLY detained, located at 09-09 Hazen Street, East Elmhurst, New York 11370.

  No court of Justice of the United States possesses exclusive Jurisdiction to Order Petitioner to be released from his present Detention.

  No previous Petition or Application for the Writ of Habeas Corpus herein sought has ever been made to any Justice of Court; nor has any Appeal ever been taken from any disposition thereof.

  Petitioner is indigent.

2

Habeas relief is properly sought as Petitioner made a motion for release which was denied by the trial court, and there is no post-trial or post-conviction remedy for the relief sought. *People ex rel. Keitt v. McMann*, 18 N.Y.2d 257 (1966); *People ex rel. Bullock v. Barry*, 2002 2002 NY Slip Op 50463(U) (N.Y. Sup 2002); *People ex. rel. Fisher v. Leonardo*, 200 A.D.2d 844 (3rd Dept 1994). The writ is appropriate where Petitioner is entitled to immediate release from custody. *CPL 30.30(2)*; *People ex rel. Chakwin on Behalf of Ford v. Warden, New York City Correctional Facility, Rikers Island,* 63 N.Y.2d 120 (1984).

Under CPL 30.30(2), an incarcerated defendant charged with a felony is entitled to release from custody if the prosecution is not actually ready for trial within 90 days. *CPL 30.30(2)*. Contrary to the trial court's finding that only 84 days of includable time have passed, Petitioner has been incarcerated for *at least* 90 days of includable time and is entitled to immediate release.

The time periods pertinent to this motion include September 6, 2018 to October 2, 2018, and October 2, 2018 to October 17, 2017. Contrary to the court's decision [Part TAP B, Judge Curtis Farber], the entirety of these periods of time are includable, bringing the number of includable days of pretrial detention to well over 100 days.

## PROCEDURAL HISTORY OF THE CASE

The petitioner is detained at AMKC awaiting re-trial on first degree robbery and other related charges under indictments 6548/06 and 41/07. Mr. Wells was arrested on December 8, 2006 and has remained incarcerated since that time, now more than eleven years. Petitioner pled guilty and was sentenced to 20 years to life in 2009. The conviction was overturned by the First Department on July 7, 2015 on the ground that Petitioner should not have been permitted to represent himself. The case was sent back for a new hearing and trial. See *People v. Wells*, 130 A.D.3d 457 (1st Dept. 2015).

Since that time, current assigned counsel has represented Petitioner and has filed motions for dismissal on 30.30 speedy trial and 30.20 constitutional speedy trial grounds. Those motions have been denied.[1] The most recent denial was October 17, 2018 issued by Judge C. Farber,

---

[1] Petitioner has filed dozens of *pro se* motions in both state and federal court, none of which were adopted by counsel. The pendency of these motions accounts for much of the excluded days contested in Petitioner's prior 30.30 dismissal motions.

finding a total of 84 includable days.  Judge Farber adopted the decision made by Judge McGrath (TAP B, September 25, 2017) when that judge found a total of 74 chargeable days from the date of retrial through September 25, 2017.   This habeas petition pertains only to the periods of delay considered by the trial court since September 25, 2017 to the present.

Counsel renewed her motion before Judge Farber and, in an oral decision, he ruled 84 chargeable days should now be counted in the case.  [The decision is attached as **Exhibit A: October 17, 2018 minutes.**]

## I.   THE DELAY FROM SEPTEMBER 6, 2018 TO OCTOBER 2, 2018 IS CHARGEABLE TO THE PROSECUTION

Although the prosecution announced they were **not** ready for trial on September 6, 2018, which was scheduled as a 'firm trial date' by Judge Farber, the court found that the period from September 6, 2018 to October 2, 2018, was not chargeable due to "issues relating to the defendant's CPL 250.10 notice." Exhibit A, p. 5.[2]

Petitioner filed notice of intent to use psychiatric evidence pursuant to CPL 250.10(1)(c), on June 8, 2017. The notice, attached as ***Exhibit B*** "contain[ed] enough information to enable the prosecution and the court to discern the general nature of the alleged psychiatric malady and its relationship to a particular, proffered defense." *People v. Almonor*, 93 N.Y.2d 571, 581–82 (1999).  Because the notice was served more than a year ago, it afforded the prosecution ample opportunity "to conduct a meaningful psychiatric examination of its own." [*Almonor,* id] thus avoiding any prejudice case law cites caused by lack of notice. *Id.* at 582.

Defense counsel's service of notice in July 2017, satisfied the statutory objective of CPL 250.10 completely. [See *Almonar,* precluding psychiatric defense due to late notice but noting that "[w]hen defendant finally revealed that he intended to rely on the insanity affirmative defense and, in addition, on a defense involving a lack of assaultive intent, *both* based on acute

---

[2] Transcripts for August 2, 2018, September 6, 2018, October 2, 2018, October 10, 2018, October 12, 2018, and October 17, 2018 are attached as **Exhibit C**. Copies of written motions, including defense October 5, 2018 30.30 release motion, the prosecution's October 6, 2018 response, defense October 10 motion and prosecution's October 11, 2018 response are attached as **Exhibit D**.

stress disorder, he brought himself in compliance with the statute". *People v. Almonor*, 93 N.Y.2d 571, 581–82 (1999) (emphasis in original)].

In the 14 months since Petitioner filed notice pursuant to 250.10(1)(c), the prosecution did not seek to have Petitioner examined by their own psychiatric expert. Reports by two defense experts, Dr. Eric Goldsmith and Dr. Daniel Capruso, reflecting the proffered defense outlined in defendant's 250.10(1)(c) notice, were provided to the prosecution on July 20, 2018. The case was on for "control" on August 2, 2018, at which time the court ordered a "firm date" for trial to September 6th. The prosecution did not object, and in fact, noted, they had no "bad dates" for adjournment. [See transcript from August 2, 2018]. The only mention they made of missing materials Dr. Goldsmith considered in writing his report, was of a report from an earlier psychiatrist who had examined Mr. Wells and found he did not have a not-guilty-by-reason-of-insanity plea [NGRI].

In reality this "report" [as listed by Dr. Goldsmith in his reference materials] was actually a three-page letter which the prosecution had possessed since it was written more than eight years ago. The prosecution never reached out to defense to clarify or question whether in fact the "report" Dr. Goldsmith referred to was in fact the letter they had long possessed. The prosecution assumed, with no substantiation, that they were missing something they already had and relied on this assumption (again, without ever reaching out to either present or prior defense counsel) for clarification. They then used this excuse to claim that they could not be ready for trial.

The prosecution also claimed they were missing several other documents Dr. Goldsmith referred to in his report. It should be noted that:

1) Dr. Goldsmith referred to thousands of documents in reaching his conclusion -- the great majority of which came from the prosecution's own files.
2) Of the incidental documents they did not have (such as letters by the prolific-writing defendant to various enforcement agencies, judges and politicians), all were merely examples of Mr. Well's disorganized and grandiose thinking. Because Mr. Wells wrote so much and sent most of what he wrote to the prosecution, the prosecution had

plentiful similar examples which they could have used to show an expert of their choice had they been diligent in their prosecution of the case.

3) Finally, the prosecution [ADA Robert Walker] never reached out to defense counsel since the filing of defense psychiatric reports in July, 2018, to ask her for any documents he may have been missing.

He waited until the next court date, August 2nd, to state he was missing an earlier report [see above], yet he did not take even minimal steps to obtain what he needed from counsel. [Because of the mountain of paper generated by Mr. Wells in this case, counsel could not assume the prosecution were missing anything unless the prosecution identified what was missing and communicated that to defense.  Once a new ADA was assigned to the case, she immediately contacted counsel about what documents she needed and they were promptly provided her.]

It is counsel's position that ADA Walker's negligent prosecution of this case deprived Mr. Wells of a speedy trial.

These issues are fleshed out further in the minutes for the oral argument on the 30.30 release hearing on October 12, 2018, included with Exhibit C.

In denying Petitioner's motion for release, the court relied on *People v. Boda*, 28 A.D.3d 379 (1st Dept. 2006). In *Boda*, the court found that a delay "resulting from proceedings related to defendant's efforts to present a psychiatric defense and the People's subsequent efforts to conduct their own psychiatric examination of defendant and to have a report prepared" were excludable, noting that "the People were not obligated to hire an expert and make preparations to rebut a psychiatric defense during a period in which legal issues as to whether defendant would be permitted to interpose such a defense were being resolved." This case is inapposite to the facts of this matter, as the prosecution had proper notice and 14 months to have their expert evaluate Petitioner.[3]

---

[3] *People v, Jackson,* 267 A.D.2d 183 (1st Dept. 1999) and *People v. Silburn,* 31 N.Y.3d 144 (2018), relied on by the prosecution, similarly concern late or absent psychiatric notice.  Both are inapplicable here, where adequate notice was provided in a reasonable time for the prosecution to secure its own expert and be ready for trial.

There is no mention in any case law that the prosecution's failure to have all documents relied on by opposing counsel, justifies them not being ready for trial.  CPL 250.10(1)(c) *does not* require, in addition to notice, that all reports be disclosed or that every document the expert may have consulted in composing the report be turned over. See *People v. George O.*, 10 Misc. 3d 462, 466 (Jackson, J., NY Crim. Ct. 2005) (regarding argument that additional information is required to be disclosed beyond 250.10(1)(c) notice: "Not only is such a requirement absent from the statute but it would be superfluous, since the People are entitled to have their own psychiatrist examine the defendant, thereby affording them sufficient opportunity to discover the nature of the defendant's mental state. Furthermore, if ambiguities remain even after the People's psychiatrist examines the defendant, this court will direct additional measures to ensure that all psychiatric issues will be fully and fairly addressed").

250.10(1)(c) notice is intended to give the prosecution notice so that they may apply to the court for an order directing that defendant submit to an examination by their own expert. The prosecution has not identified any prejudice to its ability to have its own psychiatric expert evaluate the Petitioner in the 14 months since the court accepted Petitioner's 250.10(1)(c) notice. The prosecution's failure to be ready on September 6, 2018, the firm trial date set by the court nearly 12 years after defendant was arrested and incarcerated, is not reasonable. All of the days between September 6th and October 17th (when the release motion was denied) should be included.

## II. THE DELAY FROM OCTOBER 2, 2018 TO OCTOBER 17, 2018 IS CHARGEABLE TO THE PROSECUTION

The court found that the three days after the prosecution declared they were not ready on October 2, 2018 to the day Petitioner filed the 30.30 release motion, October 5, 2018, was includable.  The court reasoned that "while in some circumstances a release motion will not prevent a trial from proceeding, in light of the complicated nature of this case and this motion, it was not reasonable to expect the trial to proceed once this motion was filed." [Exhibit A, Transcript, p. 7.]

The prosecution has made no argument that the 30.30 motion hampered their ability to be ready.  Counsel submits that the prosecution cited the alleged prejudice due to not having incidental paperwork referred to by Dr. Goldsmith, as an excuse for not being ready, while in

reality they could not answer ready for a much more obvious reason -- in September they relieved Mr. Walker of prosecuting the case and newly assigned it to a different assistant.

Furthermore, defense counsel's 30.30 application did not hinder the prosecution from going forward on the recent court dates. See *People ex rel. Bullock v. Barry*, No. 02-403954, 2002 WL 31720977, at *4 (Goldberg, J. N.Y. Sup. Ct. Nov. 13, 2002) ("it does not appear that the grounds asserted by the People would constitute a basis for excluding the delay because a defendant's bail status does not impact on the People's ability to go forward with the re-presentation").

The case has now been adjourned to October 31, 2018 to pick a date for hearings and trial, which *at the earliest* will be at the end of November.

While the prosecution has not shown any prejudice due to their belief they did not have every piece of paper the defense expert consulted in preparing his report [although they had 99 per cent], Petitioner has been tragically and unrelentingly prejudiced by his continued incarceration and by the failure of the prosecutor to exercise due diligence in bringing this case to trial.

Apart from the loss of liberty, Petitioner has been detained for *three years* without trial at one of the most notorious jails in the United States. The "intolerable conditions" endemic at Rikers Island are well documented and widely known. See, e.g., *Cuomo: Conditions at Rikers Island are intolerable, https://nypost.com/2017/03/19/cuomo-conditions-at-rikers-island-are-intolerable. City failing to care for ailing Rikers inmates living in filthy condition, April 18, 2018, NY Daily News, http://www.nydailynews.com/new-york/city-failing-care-ill-rikers-inmates-living-dirty-jails-article-1.3949081.*

Petitioner has just recently been subjected to harassment and abuse at the facility through no fault of his own. The prosecution provided a flash drive of Rosario in October 2017. In preparation for what Petitioner believed to be an imminent trial, defense counsel copied the Rosario to CD and sent it to Petitioner as is his right. Per DOC procedures, the CD was sent to an agency attorney at the DOC who cleared the disc for Petitioner's viewing.

In October 2018, the prosecution realized that prior counsel ADA Walker had failed to redact portions of the Rosario.  They requested and received a protective order from the court.

8

Although the CD had never made it to Petitioner, corrections officials raided his cell and tore through his possessions, destroying and confiscating legal documents and property. Petitioner was harassed and punished for the prosecution's failure to exercise due diligence.

In anticipation of what should have been his 30.30 release, defense counsel made arrangements with Fortune Society to provide services and programs for Petitioner. A social worker from Fortune Society interviewed Petitioner and accepted him into their program. This organization is standing by, ready to accept Mr. Wells upon his release.

WHEREFORE, Petitioner respectfully prays that the Court now Order Respondent to forthwith Release Petitioner from such Detention, summarily, pursuant to CPLR § 7003(a) or, in the alternative that it now promptly issue that Writ of habeas corpus herein sought Commanding Respondent to Produce Petitioner for a full and fair hearing hereupon before an appropriate Justice of this Court, as soon as practicable , pursuant thereto, and pursuant to N.Y. Const. Art. 1, 6, 12; and U.S. Const. Amends. 4th, 5th, and 14th, and grant Petitioner all such other and further relief as to the court may now seem just and proper herein.

DATED:    NEW YORK, NEW YORK
           October 19, 2018

                                          RESPECTFULLY YOURS,

                                          TONI MESSINA, ESQ.
                                          DANIELLE VON LEHMAN, ESQ.
                                          Attorneys for Defendant
                                          305 Broadway, Suite 1422
                                          New York, NY 10007
                                          (646) 207-4705

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CRIMINAL TERM
-------------------------------------------------------------------
THE PEOPLE OF THE STATE OF NEW YORK,
Toni Messina, Attorney on Behalf of Carl Wells,

Petitioner                                                    VERIFICATION

v.

WARDEN, ANNA M. KOSS
CORRECTIONAL CENTER 16-00
HAZEN STREET, East Elmhurst, NY 11370, or
any Other Person Having Custody of the Defendant.          INDEX # 101551/2018

Respondent.                                                NYSID # 05915794J
-------------------------------------------------------------------

TONI MESSINA, Esq., an attorney duly admitted to practice before the courts of this

state, does hereby affirm under penalty of perjury that the following statements are

true:

    1. I am the attorney of record for CARL WELLS and am familiar with the facts

upon which this petition is based.

    2. I have read the foregoing verified petition and know its contents.

    3. The contents of the foregoing verified petition are true to my knowledge, except

as to matters alleged to be upon information and belief, and as to those matters, I

believe them to be true.

    4. The sources of the aforesaid information and beliefs are court transcripts, the

court file, and documents prepared by the New York State Department of Corrections

and Community Supervision.

5. I make this petition for a writ of habeas corpus on Relator's behalf because he is presently incarcerated and further delay will cause him material injury and because the pertinent factual allegations are within my knowledge or information and belief.

DATED:        23        , October, 2018
              New York, NY


                              Toni Messina, Esq.
                              305 Broadway, Suite 1422
                              New York, New York 10007

                              Attorney for Carl Wells