UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
: 
CARL D. WELLS, :
:
                              Petitioner, :
:
          -v- :
:
SUPT MARK MILLER, :
:
                              Respondent. :
:
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/27/2023

21-cv-11231 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Petitioner Carl D. Wells ("Petitioner" or "Wells") commenced this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 28, 2021 (the "Petition") against Superintendent Mark Miller of the Green Haven Correctional Facility ("Respondent"). Respondent moves to dismiss the Petition for Petitioner's failure to exhaust his state-court remedies, or, in the alterative, for a more definite statement of Petitioner's habeas claims. Dkt. No. 27. For the reasons set forth below, the Court dismisses the Petition without prejudice.

## BACKGROUND

The following facts are taken from the Petition and portions of Petitioner's Record on Appeal that have been filed with this Court.

Between December 3 and December 7, 2006, Petitioner committed four robberies in New York. *See* Dkt. No. 46-3 at SR501; *see also* Dkt. No. 1 at ECF pp. 73–75. Petitioner was arrested on December 8, 2006, after he was found inside a stolen vehicle, and was charged with driving while intoxicated in Bronx County. *See* Dkt. No. 46-3 at SR502. Petitioner pleaded guilty in New York Supreme Court, New York County on March 9, 2011, to two counts of robbery in the second degree and was sentenced as a persistent violent felony offender to

concurrent terms of twenty years to life.  Dkt. No. 25 at ECF p. 6.  Petitioner filed a *pro se*

motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10

while his appeal was pending.  *See* Dkt. No. 46-2 at SR002.  The motion to vacate was denied on

December 4, 2013.  *Id.* at SR005.  Petitioner appealed from the order denying the motion to

vacate the judgment pursuant to CPL § 440.10.  *See* Dkt. No. 25 at ECF p. 6.  On July 7, 2015,

the Appellate Division, First Department dismissed Petitioner's appeal, but unanimously

reversed his guilty plea and remanded for further proceedings.  *Id.*; *see People v. Wells*, 14

N.Y.S.3d 6 (1st Dep't 2015).  The Appellate Division held that "[s]ince defendant's waiver of

his right to counsel was not knowing, intelligent, and voluntary, neither were his guilty pleas."

Dkt. No. 25 at ECF p. 7.  The People sought leave to appeal the First Department's decision to

the New York Court of Appeals, which was denied on October 28, 2015.  Dkt. No. 46-2 at

SR332.  Petitioner was remanded to the city correctional system and apparently held in custody

pending further proceedings.  *See* Dkt. No. 25 at ECF pp. 5, 15–16; Dkt. No. 37 ¶¶ 25–27.[1]

Petitioner was tried by jury in early 2019 on the original indictment.  *See* Dkt. No. 1 at

ECF pp. 73–75; Dkt. No. 46-3 at SR503.  On February 1, 2019, Petitioner was convicted of four

counts of robbery in the second degree—two counts in violation of New York Penal Law

§ 160.10(2)(b) and two counts in violation of New York Penal Law § 160.10(3).  *See* Dkt. No. 1

at ECF pp. 21, 78–79; Dkt. No 46-3 at SR503–04.  On February 26, 2019, Petitioner was

---

[1] Petitioner also pleaded guilty in Bronx County to driving while his ability was impaired by the
combined influence of drugs or of alcohol and any drug or drugs.  *See People v. Wells*, 944
N.Y.S.2d 560, 560 (1st Dep't 2012), *rev'd*, 999 N.E.2d 1157 (N.Y. 2013).  The First Department
found that the trial court should have suppressed the physical evidence recovered from the car in
which Petitioner was arrested because the inventory search was invalid, but it concluded that the
error was harmless.  *Id.*  The Court of Appeals reversed, finding that the error was not harmless
and vacated Petitioner's guilty plea.  *Wells*, 999 N.E.2d at 1159–60.  The record does not
indicate whether Petitioner was prosecuted again for these crimes.  *See* Dkt. No. 45 at 3 n.1.

adjudicated a persistent violent offender and sentenced to four concurrent terms of twenty years to life imprisonment.  Dkt. No. 1 at ECF p. 21; *see also id.* ¶¶ 1–7.

Petitioner appealed his conviction to the First Department.  *See* Dkt. No. 1 ¶ 9(a). Petitioner's appeal is pending due to "COVID Delay."  *Id.* ¶ 9(c).  Respondent submitted a declaration alongside his reply memorandum of law in further support of his motion to dismiss. *See* Dkt. No. 46.  In the declaration, Respondent declares that the Office of Appellate Defender ("OAD") was assigned as Petitioner's appellate counsel for his direct appeal on May 28, 2019. *Id.* ¶ 3.  The Appellate Division, First Department, extended Petitioner's time to perfect his appeal "until 180 days from the date of receipt of the complete record."  Dkt. No. 72-2 at SL004. On at least three occasions, OAD alerted Petitioner—apparently in response to his questioning— that an attorney could not be assigned to him until his completed record was received.  *See id.* at SL007 (November 8, 2022 letter); *id.* at SL009 (June 18, 2020 letter); *id.* at SL017 (December 17, 2020 letter).  In two letters to the Appellate Division, First Department dated April 24, 2021 and May 23, 2021, Petitioner complained about the delay in his appeal.  *See id.* at SL021–22 (April 24, 2021 letter); *id.* at SL023 (May 24, 2021 letter).  In the May 24 letter, Petitioner claimed that OAD "had abandoned my direct appeal.  Moreover, they are not representing my direct appeal."  *Id.* at SL023 (cleaned up).  Petitioner requested that the Appellate Division separate his direct appeal from his post-conviction motions and that his post-conviction motions be heard individually.  *Id.*  The Appellate Division responded that his request was moot because he was denied leave to appeal his post-conviction motions.  *Id.* at SL024.

Petitioner's full Record on Appeal has still not been provided to OAD.  *Id.* at SL033. Respondent has represented that his counsel has communicated with OAD, the First Department, and the District Attorney's Office and has identified the "chief remaining gap in the record,"

which is a "missing portion of the *voir dire* transcript." Dkt. No. 72 at 2.  The First Department

has indicated to Respondent that it ordered the *voir dire* transcript on February 1, 2023, and

expects to receive the transcript within thirty days.  *Id.*

Petitioner also filed a motion to vacate his judgment of conviction pursuant to CPL

§ 440.10 and a motion to set aside his sentence pursuant to CPL § 440.20, both *pro se*, which

were denied on May 22, 2019.  Dkt. No. 1 at ECF pp. 20–25; *id* ¶ 11(a).  The CPL § 440 motions

challenged his conviction and sentence on the following grounds:  "(1) the verdict sheet was

defective; (2) the indictment was defective and the trial evidence was legally insufficient; (3) the

destruction of evidence during Hurricane Sandy in October 2012 constituted newly discovered

evidence; (4) the convictions were repugnant; and (5) the defendant received the ineffective

assistance of counsel."  *See id.* at ECF pp. 21–22 (New York Supreme Court decision denying

motions).  The court found that Petitioner was procedurally barred from raising these claims in

collateral proceedings because "[e]ach of the Defendant's claims fully appears in the record of

the trial proceedings and may be raised on direct appeal."  *Id.* at ECF p. 22.  Petitioner submitted

a motion to renew or reargue the motions made pursuant to CPL §§ 440.10 and 440.20, which

was denied without an opinion on August 9, 2019.  Dkt. No. 46-3 at SR533–541; Dkt. No. 1

¶ 11(b).  Petitioner then submitted a motion to reargue or renew his CPL § 440.10 and 440.20

motions, which was denied on September 11, 2020.  *See* Dkt. No. 1 at ECF pp. 31–37.  Petitioner

sought leave to appeal all three motions to the Appellate Division, First Department, which was

denied on December 22, 2020.  Dkt. No. 46-3 at SR782.

Petitioner filed a *pro se* petition for a writ of habeas corpus under CPLR Article 70 in

New York Supreme Court, County of New York on May 19, 2021.  *See* Dkt. No. 46-4 at SR784–

89.  The petition alleged that Petitioner was impermissibly detained after his guilty pleas were

vacated by the First Department and that the documents related to his commitment after his conviction in 2019 were the same documents used in his 2011 commitment, despite the fact that his earlier commitment was based on guilty pleas that were vacated on appeal.  See *id.* at SR787-88.  The state habeas petition sought "[d]ismissal of both indictments, with prejudice from, 2006 and 2007."  *Id.* at SR788.  The State opposed the petition because Article 70 habeas petitions must be brought in the county where the petitioner is incarcerated and Green Haven Correctional Facility is located in Dutchess County, not New York County.  *See* Dkt. No 46-5 at SR824–25.  Petitioner's state habeas petition was denied on November 4, 2021 because there was "no basis in law."  *Id.* at SR888.  Petitioner filed a notice of appeal and the court indicated that the matter had been transferred to Dutchess County.  *Id.* at SR898.

Petitioner also filed a motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on or about March 20, 2019 in the Northern District of New York.  *Wells v. Annucci*, 2019 WL 2209226, at *1 & n.1 (S.D.N.Y. May 21, 2019).  The petition was transferred to this District on April 24, 2019.  *Id.* at *1.  District Court Judge Stanton dismissed Petitioner's petition without prejudice on two grounds.  First, Judge Stanton observed that Petitioner could not bring a habeas corpus petition pursuant to 28 U.S.C. § 2241, which is only appropriate for prisoners who have not yet been convicted of their crimes.  *Id.* at *2.  Judge Stanton indicated that Petitioner's conviction mooted whatever claims he might have had while he was in custody awaiting trial after his guilty plea was vacated.  *Id.*  Judge Stanton also concluded that petitioner did not exhaust all of his state-court remedies, as required under 28 U.S.C. § 2254 and thus refused to construe the petition as one brought under Section 2254.  *See id.* at *3.

## PROCEDURAL HISTORY

Petitioner filed this Petition on December 28, 2021.  Dkt. No. 1.  On February 1, 2022, having determined that the Petition should not be summarily dismissed, the Court ordered the

Clerk of Court to serve a copy of the Petition on the New York Attorney General and for the New York Attorney General to file an answer and the transcripts and briefs identified in Rule 5(c) of the Rules Governing Section 2254.  Dkt. No. 9.  On May 10 and May 16, 2022, Petitioner filed motions to "supplement and addend" certain documents to the Petition, Dkt. Nos. 25, 26, which the Court granted, Dkt. No. 32 at 1.

Respondent filed a motion to dismiss the Petition, or in the alternative for a more definite statement, on May 17, 2022, along with a supporting memorandum of law.  Dkt. No. 28. Petitioner filed a motion to strike on June 7, 2022, and two Affirmations in response to Respondent's motion to dismiss on June 7, 2022 and June 17, 2022.  *See* Dkt. Nos. 35, 37.[2] Petitioner submitted a letter to the Court, dated June 9, 2022, and requested that the letter supplement his "cross motion."  Dkt. No. 38.  Respondent submitted a reply memorandum of law in further support of his motion to dismiss on August 12, 2022, Dkt. No. 45, and a supporting declaration, which contained the Record on Appeal, that same date, Dkt. No. 46. Petitioner submitted an affirmation in response to Respondent's reply on September 6, 2022. Dkt. No. 49.

By Order dated January 9, 2023, this Court directed the parties to submit supplemental letter briefing to address whether Petitioner's failure to exhaust his habeas claims should be excused and directed Respondent to provide an update on the status of Petitioner's direct appeal.

---

[2] Dkt. No. 37 is dated April 4, 2022, before Respondent submitted his motion to dismiss.  *See* Dkt. No. 37 at ECF p. 12.  However, the affirmation is styled as an "Affirmation in Response; 'Traverse,'" *see id.* at ECF p. 1, and suggests that it is responsive to Respondent's filings, *see id.* ¶ 1 ("Respondents have not shown why the indictments . . . both, should not be dismissed with prejudice."); *id.* ¶ 2 ("Respondents did not show that subject-matter jurisdiction existed to hold a 2019 trial." (cleaned up)).  Further, the affirmation was received by the Southern District of New York Pro Se Office on June 21, 2022, after Respondent submitted his motion to dismiss.  *See id.* at 1 (intake stamp).  The Court thus deems the affirmation part of Respondent's responsive papers and considers the arguments therein in this Opinion and Order.

Dkt. No. 64.  Petitioner's letter brief was received on February 6, 2023, Dkt. No. 69, and

Respondent's letter brief was filed on February 10, 2023, Dkt. No. 72.  On February 21, 2023,

the Court issued an order directing Respondent to provide an update on the status of Petitioner's

appeal, Dkt. No. 73, which Respondent provided on March 24, 2023, Dkt. No. 79.

## LEGAL STANDARD

The Court's review of Petitioner's habeas petition is governed by the Antiterrorism and

Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254.  Under 28 U.S.C. § 2254, U.S.

district courts have jurisdiction to "entertain an application for a writ of habeas corpus in behalf

of a person in custody pursuant to the judgment of a State court only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States."  Before a district

court can proceed to the merits of a petitioner's claims, however, it must determine that the

petition complies with the AEDPA's procedural constraints.  The first of these requirements is

exhaustion:  Generally, "[a]n application for a writ of habeas corpus on behalf of a person in

custody pursuant to the judgment of a State court shall not be granted unless . . . the applicant has

exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see also*

*Day v. McDonough*, 547 U.S. 198, 205 (2006) (stating that "exhaustion of state remedies" is a

"threshold barrier[]").  "An applicant shall not be deemed to have exhausted the remedies

available in the courts of the State . . . if he has the right under the law of the State to raise, by

any available procedure, the question presented."  28 U.S.C. § 2254(c).  "[E]xhaustion of state

remedies requires that [a] petitioner fairly present federal claims to the state courts in order to

give the [s]tate the opportunity to pass upon and correct alleged violations of its prisoners'

federal rights."  *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (internal quotation marks

omitted) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)).

"[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, "one full opportunity" generally means that a petitioner has filed "a direct appeal to the relevant Appellate Division and [sought] leave to appeal to the New York Court of Appeals." *Elleby v. Smith*, 2020 WL 2611921, at *3 (S.D.N.Y. May 22, 2020). "Where a claim is not appropriate for direct appeal because it cannot be demonstrated on the basis of the pretrial or trial record . . . a petitioner may exhaust the claim by raising it to the state trial court in a collateral post-conviction motion, such as a motion pursuant to [CPL] § 440." *Id.* (internal quotation marks and citation omitted and alteration accepted). For the claim to be exhausted, a petitioner must then seek leave to appeal any denial of a CPL § 440 motion from the Appellate Division. *See Murphy v. Warden of Attica Corr. Facility*, 2020 WL 2521461, at *2 (S.D.N.Y. May 15, 2020) ("Should a petitioner raise for habeas corpus relief any grounds raised in [CPL] § 440.10 motions and/or other collateral motions, he must show that those grounds have been completely exhausted by seeking leave to appeal to the New York State Supreme Court, Appellate Division.").

Because Petitioner proceeds *pro se*, the Court is obliged to construe his Petition and submissions liberally, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted).

## DISCUSSION

Petitioner presents four grounds for issuing a writ of habeas corpus in his Petition: (1) Petitioner is actually innocent, *see* Dkt. No. 1 ¶ 12 (Ground One); (2) the trial court lacked subject matter jurisdiction because "Petitioner was illegally detained" for trial and only "unconstitutionally obtained evidence" was presented to the Grand Jury, *see id.* (Ground Two)

(cleaned up); Dkt. No. 20 ¶ 2; (3) prosecutorial misconduct, *see* Dkt. No. 1 ¶ 12 (Ground Three); and (4) lack of "meaningful representation," which the Court construes as an ineffective assistance of counsel claim, *see id.* (Ground Four); Dkt. No. 49 ¶ 2.  Petitioner raises several other grounds in his response affirmation, including that (1) the prosecution violated Petitioner's double jeopardy rights by trying Petitioner for the same crimes in Bronx County and New York County, *see* Dkt. No. 37 ¶ 14, and (2) Petitioner's Fourth Amendment rights were violated by using evidence that was suppressed by the New York Court of Appeals, *see id.* (citing *People v. Wells*, 999 N.E.2d 1157 (N.Y. 2013)).

Respondent argues that the Petition must be dismissed because Petitioner's direct appeal is still pending.  *See* Dkt. No. 28 at 3.  Respondent further argues that the grounds raised in the Petition are "at most partially exhausted" and thus the Court is precluded from adjudicating Petitioner's claims.  *Id.* at 4; *see also* Dkt. No. 45 at 13.  Petitioner counters that the exhaustion requirement should be excused because the appeal has been "botched" because documents have been lost and his appeal has been delayed for years.[3]  *See* Dkt. No. 49 ¶ 4; *see also* Dkt. No. 38

---

[3] Petitioner also argues that Respondent's motion to dismiss must "be stri[c]ken for failure to comply with the Court's Orders to file answer and supply the Court with trial record."  Dkt. No. 34-1 ¶ 1.  Petitioner's argument can be understood in two different ways, neither of which has merit.  First, Petitioner may be arguing that the Court improperly granted Respondent extensions of time to file his answer, *see* Dkt. Nos. 17, 23, without providing "written notice to Petitioner," Dkt. No. 34 ¶ 1.  Courts, however, have broad discretion to extend time "with or without motion or notice" for good cause.  Fed. R. Civ. P. 6(b)(1)(A).  Alternatively, Petitioner may be arguing that Respondent erred in filing a motion to dismiss, instead of answering Petitioner's Petition, as directed by the Court.  *See* Dkt. No. 9.  Rule 4 of the Rules Governing Section 2254 provides that "[i]f the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or take other action the judge may order."  The advisory committee notes to Rule 4 explicitly contemplate the "judge . . . authoriz[ing] the respondent to make a motion to dismiss based upon information furnished by respondent, . . . that petitioner has failed to exhaust state remedies."  Rule 4 of the Rules Governing Section 2254, Advisory Committee Note; *see also* Rule 12 of the Rules Governing Section 2254 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").

¶¶ 6–8.  He further contends that his subject matter jurisdiction claim need not be exhausted and that his ineffective assistance of counsel, lack of jurisdiction, and prosecutorial misconduct claims were exhausted through his CPL § 440 motions.  *See* Dkt. No. 1 at ECF pp. 7–11; Dkt. No. 38 ¶ 9.

The Court declines to hear the Petition while Petitioner's direct appeal is pending.  At least two circuits have held that, with limited exceptions, a pending direct appeal precludes a petitioner from bringing a habeas petition under Section 2254, even if the relevant grounds have already been exhausted.  *See Sherwood v. Tomkins*, 716 F.2d 632, 634 (9th Cir. 1983) ("When, as in the present case, an appeal of a state criminal conviction is pending, a would-be habeas corpus petitioner must await the outcome of his appeal before his state remedies are exhausted, even where the issue to be challenged in the writ of habeas corpus has been finally settled in the state courts."); *Williams v. Bailey*, 463 F.2d 247, 248 (5th Cir. 1972) (same); *see also Miller v. Glanz*, 331 F. App'x 608, 610 (10th Cir. 2009) (endorsing this holding in dicta).  As the Ninth Circuit reasons, "even if the federal constitutional question raised by the habeas corpus petitioner cannot be resolved in a pending state appeal, that appeal may result in the reversal of the petitioner's conviction on some other ground, thereby mooting the federal question."  *Sherwood*, 716 F.2d at 634.

The Second Circuit appears never to have addressed whether a pending state-court appeal precludes a petitioner from bringing otherwise exhausted claims in a writ of habeas corpus.  The Circuit has addressed a similar issue under the federal habeas statute.  *See* 28 U.S.C. § 2255.  Under Section 2255, there is no similar exhaustion requirement; a district court is permitted to adjudicate a Section 2255 motion while a direct appeal is pending.  *See United States v. Outen*,

Thus, Respondent did not err by filing a motion to dismiss instead of answering the Petition.

286 F.3d 622, 632 (2d Cir. 2002).  Still, "[o]rdinarily, a defendant must exhaust his direct

appeals before applying for habeas relief."  *United States v. Vilar*, 645 F.3d 543, 546 (2d Cir.

2011).  "[D]istrict courts in this Circuit have generally denied without prejudice as premature

those § 2255 motions that are filed during the pendency of a direct appeal."  *Rivera v. United*

*States*, 2016 WL 9022576, at *1 (S.D.N.Y. Aug. 24, 2016) (collecting cases).  This practice is

rooted in "judicial economy and the concern that the results on direct appeal may make the

district court's efforts on the § 2255 motion a nullity."  *Outen*, 286 F.3d at 632; *see also United*

*States v. Pizarro*, 2021 WL 4665044, at *3 (S.D.N.Y. Oct. 6, 2021).

Concerns of judicial economy are equally valid in the state habeas context, and these

concerns give the Court pause before adjudicating a habeas petition while a petitioner's direct

appeal is pending.  But the exhaustion requirement of Section 2254(b)(1) is grounded in more

than concerns of efficiency.  It is "grounded in principles of comity; in a federal system, the

States should have the first opportunity to address and correct alleged violations of state

prisoner's federal rights."  *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Hearing a habeas

petition while a petitioner's direct appeal is pending, even for claims that are exhausted, would

violate these notions of comity by cutting off a state court's ability to address any other

constitutional violations.  The Supreme Court in *Rose v. Lundy* highlighted additional factors that

recommend allowing a direct appeal to proceed before hearing a habeas petition.  First, by

grappling with alleged constitutional errors, "state courts may become increasingly familiar with

and hospitable toward federal constitutional issues."  455 U.S. 509, 519 (1982).  Second, a direct

appeal allows the factual record to develop, which in turn aids federal courts in their adjudication

of habeas petitions.  *Id.*  The Court finds these rationales for permitting a direct appeal to proceed

compelling and thus refuses to adjudicate Petitioner's habeas petition while his direct appeal is

pending. *See Ali v. Superintendent of Otisville Corr. Facility*, 2015 WL 5657384, at *1 (E.D.N.Y. Sept. 23, 2015) ('The Petition, therefore, is premature, as it is undisputed that, when it was filed, Petitioner's direct appeal from his judgment of conviction was still pending before the intermediate appellate courts in New York.").

Even if the Court were disinclined to follow this rule, it would be obliged to dismiss the Petition. District courts are not permitted to entertain "mixed petitions," or those that contain both exhausted and unexhausted claims; the "district court must dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Lundy*, 455 U.S. at 510; *see also Rhines v. Weber*, 544 U.S. 269, 275 (2005) (holding that district courts might, "rather than dismiss the mixed petition pursuant to *Lundy*, . . . stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims"). Here, Petitioner concedes that his "actual innocence" claim "has not been presented in some state or federal court." Dkt. No. 1 ¶ 13. Thus, the Petition is at best mixed and must be dismissed for failure to exhaust.[4]

---

[4] The Court need not pass judgment on whether Petitioner's other claims are exhausted at this stage. However, the Court observes that the court dismissed Petitioner's CPL § 440 motions—which contained some, but not all, of the claims that Petitioner raises here—on procedural grounds because "[e]ach of the Defendant's claims fully appears in the record of the trial proceedings and may be raised on direct appeal." Dkt. No. 1 at ECF p. 22. Thus, to fully exhaust his claims, Petitioner should have raised the claims brought here on his direct appeal. *See People v. Donovon*, 487 N.Y.S.2d 345, 353 (2d Dep't 1985) ("The purpose of [a CPL § 440.10 motion] is to inform a court of facts not reflected in the record and unknown at the time of the judgment which, as a matter of law, would undermine the basis of the judgment. By its very nature, the procedure cannot be used as a vehicle for an additional appeal or as a substitute for a direct appeal." (citations omitted)); *see also Pinckney v. Lee*, 2020 WL 6136302, at *9 (E.D.N.Y. Oct. 19, 2020) (same).

Petitioner argues that the delay in adjudicating his appeal excuses the exhaustion requirement.  Dkt. No. 38 ¶ 4.  This argument has some force.  Section 2254(b)(1) of Title 28 of the United States Code contains two exceptions to the exhaustion requirement.  First, a petitioner need not exhaust state remedies if "there is an absence of available State corrective process."  28 U.S.C. § 2254(b)(1)(B)(i).  Second, the exhaustion requirement is excused if "circumstances exist that render such process ineffective to protect the rights of the applicant."  *Id.* § 2254(b)(1)(B)(ii).  The Second Circuit has held that "a failure to exhaust may be excused . . . where there has been 'substantial delay in the state criminal appeal process'" because such delay renders the state appeals process ineffective.  *Roberites v. Colly*, 546 F. App'x 17, 19 (2d Cir. 2013) (quoting *Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991)); *see also Washington v. James*, 996 F.2d 1442, 1449 (2d Cir. 1993) ("[W]here nonexhaustion is primarily the fault of the state court system itself, comity and federalism cannot require blind deference.  We will allow the state courts every opportunity to address legal objections to a state conviction, but when the state courts refuse to avail themselves of those opportunities we will not sit back while a possibly innocent person languishes in prison."); 17B Wright & Miller, Fed. Prac. & Proc. Juris. § 4264.2 (3d ed.) ("[I]f there is undue delay between the prisoner's application to the state courts and final disposition of it there, the federal courts consider that the state corrective process is ineffective to protect the rights of the prisoner and will pass on a habeas corpus petition.").

In determining whether a delayed appeal violates a petitioner's due process rights, the Second Circuit looks to the factors enunciated by the Supreme Court in *Barker v. Wingo* to determine whether a defendant has been deprived of his right to a speedy trial:  "[(1)] Length of delay, [(2)] the reason for the delay, [(3)] the [petitioner]'s assertion of his right, and [(4)] prejudice to the [petitioner]."  *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see Brooks v.*

*Jones*, 875 F.2d 30, 31 (2d Cir. 1989).[5]  "[N]o one factor is dispositive and all are to be considered together with the relevant circumstances."  *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990).  Courts may also consider a fifth factor, the interests of federal-state comity. *Brooks*, 875 F.2d at 32; *see also Roberites*, 546 F. App'x at 20.  The Second Circuit has suggested that this test should also apply in determining whether an appellate delay excuses a failure to exhaust.  *See Roberites*, 546 F. App'x at 19–21.

Petitioner argues that the appeal was "botched," that files have been lost, and that government agencies have "interfere[d]" with respect to the lost files.  *See* Dkt. No. 49 ¶ 4.  He further argues that his assigned appellate counsel has been deficient in certain unspecified respects.  *Id.*  Petitioner acknowledges that at least part of the delay is due to "Covid-19 . . .[and] closed courts."  Dkt. No. 38 ¶ 6; *see also* Dkt. No. 1 ¶¶ 9(c), 13.  Respondent agrees that the delay is partially attributable to the COVID-19 pandemic, "which closed state courts for several months," and counters that "the appellate delay to date is hardly so extraordinary as to excuse the

---

[5] The Court notes that Petitioner has not sought habeas relief for a violation of his due process rights as a result of the delay in adjudicating his appeal.  That claim has been construed to permit the court to issue "a conditional order requiring a state court to hear the appeal within a specific period of time or release the prisoner."  *Simmons v. Reynolds*, 898 F.2d 865, 869–70 (2d Cir. 1990); *see also Mathis v. Hood*, 937 F.2d 790, 794 (2d Cir. 1991) (requiring "some showing of prejudice to the appeal" before a court can grant immediate habeas relief).  However, construing the *pro se* Petition and the opposition papers to raise the strongest possible grounds for relief, as the Court is required to do, *see Thompson v. Choinski*, 525 F.3d 205, 209–10 (2d Cir. 2008), the Petition here cannot be deemed to seek relief based on a violation of Petitioner's due process rights to a speedy appeal.  Although there is some question of whether the conditional writ remains an appropriate remedy after the passage of the AEDPA, *see Brightley v. Heath*, 2015 WL 10487766, at *29 (S.D.N.Y. Jan. 6, 2015), *report and recommendation adopted*, 2016 WL 1060326 (S.D.N.Y. Mar. 15, 2016) ("There is, however, no 'clearly established' Supreme Court law, within the meaning of AEDPA, that expands the Sixth Amendment's guarantee of a speedy trial to ensure criminal defendants a speedy appeal—despite the fact that such law is well established in this circuit."); *see also Tripathy v. Schneider*, 473 F. Supp. 3d 220, 232–34 (W.D.N.Y. 2020) (same), the Court need not consider at this point whether a conditional writ is an available remedy or, if it is, whether it is appropriate when, as discussed in detail below, the *Barker* factors only weakly favor Petitioner.

exhaustion requirement." Dkt. No. 45 at 12. Respondent further argues that the delay is not the fault of the government because it is attributable to a court reporter who has failed to deliver the remaining portion of the record on appeal, that Petitioner has not asserted his right to a speedy appeal and has not offered any evidence that the delay has caused him prejudice, and that federal-state comity "very strongly favors [R]espondent." Dkt. No. 72 at 3. The Court addresses each *Barker* factor in turn and concludes that exhaustion should not be excused in this case.

The Second Circuit has not "define[d] precisely, a specific interval of time after which a habeas petition based on delay of a state prisoner's appeal would excuse compliance with the federal exhaustion requirement." *Simmons v. Reynolds*, 898 F.2d 865, 870 (2d Cir. 1990). *But see Harris v. Champion*, 15 F.3d 1538, 1556 (10th Cir. 1994) (holding that "delay in adjudicating a direct criminal appeal beyond two years from the filing of the notice of appeal gives rise to a presumption that the state appellate process is ineffective"). In dicta, the Second Circuit suggested that a "three or four year[]" delay could be sufficient to establish a violation of a prisoner's due process rights. *Simmons*, 898 F.2d at 870. Despite its suggestion in *Simmons*, the Second Circuit has generally required more than three or four years of appellate delay before concluding that a prisoner's due process rights have been violated. *See Vasquez v. Reynolds*, 2002 WL 417183, at *6 (S.D.N.Y. Mar. 18, 2002), *aff'd*, 58 F. App'x 533 (2d Cir. 2003) (collecting cases and concluding that four-year, nine-month delay "is shorter than the delay in most cases in which the U.S. Court of Appeals for the Second Circuit has found a denial of due process"). *But see Roberites*, 546 F. App'x at 19–20 (noting that over three-year delay "tilts in favor of excusing [petitioner's] failure to exhaust"). In addition, "[w]hen determining whether an appellate delay is excessive, courts have considered the length of the delay within the scope of the prisoner's entire sentence." *Paulin v. Grady*, 2016 WL 4509068, at *5 (S.D.N.Y. Aug. 24,

2016) (also noting that courts should "proceed with caution" when looking to the length of the prisoner's sentence "because adopting a rule that delay is excessive" based on a prisoner's sentence could "discourage the prompt disposition of appeals for prisoners with longer sentences" (internal quotation marks and citation omitted)).

Here, Petitioner was convicted on February 1, 2019, and sentenced on February 26, 2019. Dkt. No. 1 at ECF p. 21; Dkt. No. 46-3 at SR503–04.  On March 22, 2019, Petitioner timely appealed the judgment of conviction and his sentence, Dkt. No. 72-2 SL001, and he was assigned appellate counsel for his direct appeal on May 28, 2019, Dkt. No. 46 ¶ 3.  Petitioner has been waiting approximately four years for his appeal to be heard,[6] and the appeal has not yet been perfected.  Though this delay represents a relatively short proportion of his twenty-years to life sentence, "the length of the delay [still] tilts in favor" of excusing the exhaustion requirement.  *See Roberites*, 546 F. App'x at 19–20.  *But see Hall v. Le Claire*, 2015 WL 6395869, at *16 (S.D.N.Y. Oct. 21, 2015) (finding in due-process context that 5.5 year delay, although "long," did not weigh in favor of petitioner because "the delay was a small fraction of" petitioner's twenty-five year to life sentence); *Vazquez v. Bennett*, 2002 WL 619282, at *2 (S.D.N.Y. Apr. 17, 2002) (noting in due-process context that the first factor did "not offer petitioner much help" because the "delay in this case—four years—is long, but not nearly as long as the delays in [other Second Circuit] cases").

The remaining *Barker* factors—the reason for the delay, the petitioner's assertion of his right, and prejudice to the petitioner—tilt less heavily, if at all, towards Petitioner.  In *Barker v. Wingo*, the Supreme Court held that "different weights should be assigned to different reasons"

---

[6] Petitioner's contention that the delay should be calculated to 2007, the year of his more recent indictment, lacks merit.  Dkt. No. 38 at 2.  The delay is calculated from the time of filing of the appeal, not the date of indictment.  *See, e.g.*, *Roberites*, 546 F. App'x at 19–20.

for delay.  407 U.S. at 531.  While "a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily."  *Id.*; *see also United States v. Black*, 918 F.3d 243, 260 (2d Cir. 2019) ("[N]egligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense.").  "The Sixth Amendment is rarely violated by delay attributable to the defendant or by delay that serves some legitimate government purpose."  *United States v. Moreno*, 789 F.2d 72, 79 (2d Cir. 2015).

In a letter to the Court, submitted in response to the Court's request to Respondent for an update on the status of Petitioner's direct appeal, Dkt. No. 64, Petitioner's appellate counsel represented that the delay in perfecting Petitioner's appeal is the result of the delay in receiving the complete record on appeal from the State, *see* Dkt. No. 72-2 at SL033.  Respondent attributes this delay to two causes, neither of which weigh heavily against the government.  First, Respondent argues, and Petitioner concedes, "Starting in March of 2020, the COVID-19 pandemic for months limited the operation of state courts in New York City to essential or urgent matters.  Even after in-person operations were expanded, courthouses were not fully staffed, delaying the production of records."  Dkt. No. 72 at 2; *see also* Dkt. No. 1 ¶ 9(c) (attributing a portion of his delayed appeal to "COVID Delay").  Any portion of the delay in receiving the record on appeal that resulted from the diminished court operations during the COVID-19 pandemic, though regrettable, also served a legitimate government purpose and does not count against the State.  *See United States v. Akhavan*, 523 F. Supp. 3d 443, 451 (S.D.N.Y. 2021), *aff'd sub nom. United States v. Patterson*, 2022 WL 17825627 (2d Cir. Dec. 21, 2022) (summary order) (finding, in the speedy trial context, that delays resulting from the COVID-19 pandemic are "a neutral reason outside of the Government's control").  Second, Respondent contends that

both the size of the record and the difficulty in obtaining a missing portion of the *voir dire* transcript from a retired court reporter have impeded the State's ability to supply OAD with the full record.  *See* Dkt. No. 72 at 2–3.  This delay, though attributable to the State, is "fairly 'neutral'" and thus does not weigh heavily against the government.  *See Richard-Antonio v. O'Meara*, 2013 WL 5019395, at *8 (S.D.N.Y. May 21, 2013), *report and recommendation adopted*, 2013 WL 5049065 (S.D.N.Y. Sept. 13, 2013) (holding that "the court reporters' tardy productions of transcriptions . . . does not support finding a due process violation").

Petitioner's assertion of his right to an appeal weighs in favor of him but only slightly. "Factors indicative of whether a petitioner has sought to assert his right to a speedy appeal include: (1) whether the petitioner takes steps to obtain counsel, (2) whether the petitioner regularly inquires of his counsel or the court about the delays in his appeal, and (3) whether the petitioner files a grievance against his appointed counsel."  *Richard-Antonio*, 2013 WL 5019395, at *8 (citation omitted).  Here, Petitioner has taken steps to assert his right to a speedy appeal: Petitioner obtained appointed appellate counsel, *see* Dkt. No. 72-2 at SL004-05, there is evidence in the record that suggests that Petitioner wrote to OAD on three occasions requesting that an attorney be assigned to his appeal, *see id.* at SL007, SL009, SL017, and Petitioner wrote to the Appellate Division twice complaining about the delay in his direct appeal, *see id.* at SL021–23. However, there is no evidence in the record that Petitioner has filed a grievance against his appointed counsel or requested new appellate counsel and all but one of the letters sent to OAD and the Appellate Division date from before May of 2021.[7]  Petitioner has thus asserted his rights

---

[7] Nor is there any evidence in the record that Petitioner has asserted his right to a speedy appeal by taking steps—including writing letters to or otherwise contacting the Appellate Department— to alleviate the primary source of delay: the Appellate Division's delivery of the complete record on appeal to Petitioner's appellate counsel.  Stated differently, "[b]ased on the record, [there is no indication that] petitioner made reasonable efforts to secure the missing trial minutes needed

to a speedy appeal, though he has not done so consistently and has not leveraged every tool at his disposal.[8] *See Brown v. Costello*, 2004 WL 1837356, at *3 (S.D.N.Y. Aug. 17, 2004) (finding that the petitioner "made an adequate effort to assert his right to a speedy appeal" when he (1) "sought to proceed *in forma pauperis*"; (2) "sought to communicate with his various appoint counsel" and the Appellate Division; *and* (3) "filed grievances against the state-appointed representatives that failed to pursue his appeal"); *cf. Roberites*, 546 F. App'x at 20 (noting that assertion-of-rights factor "tilts in [the petitioner's] favor" because he, *inter alia*, moved to appoint new counsel shortly after appointed attorney failed to perfect appeal by required deadline); *Paulin v. Grady*, 2015 WL 11988976, at *4 (S.D.N.Y. Dec. 22, 2015), *report and recommendation adopted*, 2016 WL 4509068 (noting that the petitioner's "failure to also file a grievance against his attorney is not significant" given his "*aggressive* efforts to stimulate action with regard to his appeal," including engaging in "much correspondence with counsel" and requesting a scheduling order from the Appellate Division (citation omitted and emphasis added)).

Petitioner, however, has not demonstrated that this delay will prejudice his appeal. A petitioner must state with "specificity" facts "that would enable the Court to determine that 'there is a reasonable probability that, but for the delay, the result of the appeal would have been different.'" *Richard-Antonio*, 2013 WL 5019395, at *9 (quoting *Mathis v. Hood*, 937 F.2d 790, 794 (2d Cir. 1991)) (collecting cases); *cf. United States v. Cain*, 671 F.3d 271, 297 (2d Cir. 2012)

---

to perfect his appeal" and, by extension, that he asserted his due process rights to a speedy appeal. *Cameron v. LeFevre*, 887 F. Supp. 425, 433 (E.D.N.Y. 1995).

[8] Respondent argues that "[p]rior to mid-2021, [Petitioner] was apparently content to let the direct appeal move at its own pace, as he was focused on his *pro se* CPL § 440 motions." Dkt. No. 72 at 3. However, this assertion is belied by the record, which suggests that Petitioner made efforts to have an OAD attorney assigned to his appeal in June and December of 2020. *See* Dkt. No. 72-2 at SL009, SL017.

("[W]e have generally required a showing of some significant trial-related disadvantage in order to establish a speedy-trial violation." (citation omitted)).[9]  In determining whether a petitioner has been prejudiced in the due-process context, the Second Circuit has adopted a test akin to "the second prong of the *Strickland* test," holding that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mathis*, 937 F.2d at 794 (quoting *Strickland v. Washington*, 466 U.S. 668, 669 (1984)) (citation omitted).  There are no factual allegations and supporting evidence, specific or otherwise, in the Petition or in Petitioner's papers that would suggest that his appeal will be prejudiced by this delay.  The Court thus cannot conclude that this factor favors Petitioner.  *See Richard-Antonio*, 2013 WL 5019395, at *9 ("[A]bsent any showing that these issues are present, the Court cannot assume prejudice on the basis of delay alone.").

The fifth factor— the interests of federal-state comity—in contrast, weighs heavily against this Court waiving the exhaustion requirement.  As described, the exhaustion requirement is rooted in principles of comity.  *See supra* pp. 11–12.  The interests of federalism, however, only lead so far; should delay render appellate review ineffective, then a federal court should excuse the exhaustion requirement and exercise its habeas jurisdiction.  *See* 28 U.S.C. § 2254(b)(1)(B)(ii).  It logically follows that should a dormant appeal show tangible signs of

---

[9] In the due process context, courts in this Circuit have used a broader test for prejudice. "Prejudice in this context should be assessed in light of the interests that petitioner's due process right to a reasonably speedy appeal is designed to protect, *i.e.*, (1) to prevent oppressive post-trial incarceration, should the appeal ultimately prove successful; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the appeal and any resulting retrial will be compromised by the passage of time." *Vazquez v. Bennett*, 2002 WL 619282, at *4 (S.D.N.Y. Apr. 17, 2002) (cleaned up).  However, only the third factor speaks to whether the appeals process is "ineffective to protect the rights of the applicant," 28 U.S.C. § 2254(b)(1)(B)(ii); the first two factors reflect whether a petitioner's due process rights have been violated, a question not raised by the Petition.  The Court thus does not consider these factors in its analysis.

progress, any argument that the state appellate process is ineffective must carry less weight.  *See Richard-Antonio*, 2013 WL 5019395, at *10 ("[E]ven if the Court were to find that the appellate delay was egregious, '[w]hen a previously-stalled state . . . proceeding has come to life . . . , it is appropriate for a federal court to give the state appellate courts an opportunity to hear the claims in the first instance.'" (quoting *Swain v. Murphy*, 2010 WL 1279051, at *2 (D. Conn. Mar. 26, 2010))).  On March 24, 2023, in response to the Court's directive, Respondent submitted a letter to the Court providing an update on the status of Petitioner's appeal.  *See* Dkt. No. 79.  The letter indicates that Respondent identified the "chief impediment to completing the appellate record"— the fact that "certain *voir dire* minutes had not been transcribed"—and detailed certain actions that Respondent's counsel took to expedite the transcription of the *voir dire* minutes, which was completed on March 21, 2023.  *Id.* at 1.  Respondent's submission also appended a letter addressed to the Court from David Bernstein, the Deputy Attorney in Charge of OAD, Petitioner's appellate counsel.  *See* Dkt. No. 79-1.  That letter confirms that OAD has been provided with the *voir dire* transcript and that it now believes that its "180-day clock to perfect an appeal . . . has begun to run as of 3/21/23," subject to the extensions provided by the Indigent Criminal Appeals Management Program agreement.  *Id.* at 1; *see also* Dkt. No. 72 at SL004 (Appellate Division, First Department's Indigent Criminal Appeals Management Program).  OAD will now begin the process of finding Petitioner an attorney and expects to do so within the next month.  Dkt. No. 72 at 1–2.  Respondent's counsel also states that he is working to schedule a meeting with the Appellate Division to determine what actions, if any, will be taken to expedite Petitioner's appeal.  Dkt. No. 79 at 2.  "These circumstances indicate that, despite the noted lengthy delay, [Petitioner's] appeal is finally on track for a merits assessment by the New York courts."  *Roberites*, 546 F. App'x at 20.

This Court thus declines to waive the exhaustion requirement and judge the merits of the Petition at this time.  The length of the delay in hearing Petitioner's appeal cannot be said to be excessive in light of the fact that the reasons for this delay are relatively neutral, Petitioner has made limited attempts to assert his right to a speedy appeal, and there is a lack of demonstrated prejudice to Petitioner's appeal.  Now that Petitioner's appeal is proceeding, the interests of federal-state comity require that the New York state courts have the first opportunity to hear Petitioner's constitutional claims.  *See id.* (affirming district court's dismissal for failure to exhaust because, although *Barker* factors favored petitioner, the "principles of comity" and "the fact that this appeal is now moving forward" precluded the court from addressing the merits of the petitioner's claims (citation omitted)); *Richard-Antonio*, 2013 WL 5019395, at *10 (collecting cases and concluding that, even though certain of the *Barker* factors favored the petitioner, the court should not excuse the exhaustion requirement, because the petitioner's "appeal is poised to be perfected and . . . the interest in state-federal comity favors allowing the Appellate Division to hear his claims first").

## CONCLUSION

Respondent's motion to dismiss the Petition is GRANTED.  The Petition for habeas corpus relief is thus DENIED without prejudice to Petitioner filing a new petition after he has exhausted his state court remedies or, if the delays in Petitioner's appeal persist, to bringing a claim seeking conditional habeas relief based on a violation of Petitioner's due process rights as a result of the appellate delay.

Because Petitioner has not at this time made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253.  The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would

not be taken in good faith, and therefore in forma pauperis status is denied for purposes of appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to close Dkt. No. 27.


SO ORDERED.

Dated: March 27, 2023
       New York, New York                          LEWIS J. LIMAN
                                            United States District Judge